PARKER, PARKER, AS SUPERINTENDENT FOR THE FIVE CIVILIZED TRIBES, ET AL. *v.* RICHARD ET AL., CO-ADMINISTRATORS OF RICHARD.

APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

Nos. 313, 563. Argued April 24, 1919.—Decided June 2, 1919.

Under § 9 of the Act of May 27, 1908, c. 199, 35 Stat. 312, providing "that the death of any allottee . . . shall operate to remove all restrictions upon the alienation of said allottee's land: *Provided*, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee," lands of a deceased full-blood allottee, descended to a full-blood heir and not conveyed with the approval of such court, are "restricted lands" in the sense of § 2 of the same act, which provides that leases of "restricted lands" for oil, gas or other mining purposes may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by him, and not otherwise. P. 238.

The fact that by the proviso of § 9, *supra*, Congress authorized a state court–practically as a federal agency–to sanction conveyances, does not affect the force and operation of the restrictions while they remain. *Id.*

During the continuance of such restrictions, the duty to protect the interests of the full-blood heir by supervising the collection, care and disbursement of royalties arising from an oil and gas lease made under § 2, remains with the Secretary of the Interior. P. 239.

245 Fed. Rep. 330, reversed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Kearful* for appellants.

*Mr. Britton H. Tabor* and *Mr. James B. Lucas* for appellees.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a suit to enjoin two representatives of the Secretary of the Interior—the Superintendent and the Cashier of the Five Civilized Tribes—from collecting future royalties on an oil and gas lease of land allotted to a Creek Indian and to compel them to surrender royalties already collected. In the District Court there was a decree for the defendants, which the Circuit Court of Appeals reversed, one judge dissenting. 245 Fed. Rep. 330. The District Court then complied with the mandate by entering a decree for the plaintiffs, and this the Circuit Court of Appeals declined to disturb. Appeals from the decisions of the latter bring the case here.

The questions to be considered are whether the land covered by the lease is land from which restrictions on alienation have been removed, and whether the supervisory authority of the Secretary of the Interior over the collection, care and disbursement of the royalties has terminated.

The land was part of the Creek tribal lands and was allotted under the Acts of March 1, 1901, c. 676, 31 Stat. 861, and June 30, 1902, c. 1323, 32 Stat. 500, the allottee being a minor and an enrolled Indian of the full blood. In 1912, while he was yet a minor, the oil and gas lease was given by his guardian, the lease being approved by the court having jurisdiction of his estate and by the Secretary of the Interior. The allottee died in 1916, while still a minor, and left his father, a full-blood Creek Indian, as his only heir. Approximately $280,000 in royalties have accrued under the lease—part before and part since the allottee died. These royalties have been collected by the defendants pursuant to the terms of the lease and the regulations of the Secretary of the Interior and are being

held by them in trust under a provision in the regulations which authorizes them to retain and care for such funds "until such time or times as the payment thereof is considered best for the benefit of said lessor, or his or her heirs." The plaintiffs are the administrators of the estate of the deceased allottee.

By § 1 of the Act of May 27, 1908, c. 199, 35 Stat. 312, Congress declared that "all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe." There was no such removal in this instance and it is conceded that at the date of the lease and at the time of allottee's death the alienation of the land was still restricted.

By § 2 of the same act Congress declared that "leases of restricted lands for oil, gas or other mining purposes . . . may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise." The lease was given under this provision and was to run for a term of ten years and as much longer as oil or gas might be found in paying quantity. It provided, conformably to the regulations, that the Secretary of the Interior, through his representatives, should supervise all operations under the lease, that the royalties thereunder should be paid to his representatives, that, with exceptions not material here, the regulations as then or thereafter in force should be deemed part of the lease, and that in the event restrictions on alienation should be removed the

supervision of the Secretary of the Interior over the lease
should be relinquished at once and all further royalties
thereunder should be paid to the lessor or the then owner
of the lands.

One of the regulations prescribed by the Secretary deals
with the payment to lessors, their guardians, heirs, etc., of
moneys collected as royalties by his representatives and
specially authorizes the latter, as before indicated, to
withhold such payment in whole or in part for such time
as may be in accord with the best interests of the lessor or
his heirs.  It is under this regulation that the royalties
already collected are being retained.  The record indicates
that a considerable portion of them has been invested in
interest-bearing bonds of the United States, but as the
propriety of this is not called in question, it may be passed
without further notice.

By the Act of 1908, which imposed the restrictions on
alienation and contained the leasing provision, Congress
further declared, in § 9, "that the death of any allottee
. . . shall operate to remove all restrictions upon
the alienation of said allottee's land: *Provided,* That no
conveyance of any interest of any full-blood Indian heir
in such land shall be valid unless approved by the court
having jurisdiction of the settlement of the estate of said
deceased allottee."  In the absence of the proviso it would
be very plain that on the death of the allottee all restric-
tions on the alienation of the land allotted to him were
removed.  But the proviso is there and cannot be disre-
garded.  It obviously limits and restrains what precedes
it.  In exact words it puts full-blood Indian heirs in a
distinct and excepted class and forbids any conveyance of
any interest of such an heir in such land unless it be
approved by the court named.  In other words, as to
that class of heirs the restrictions are not removed but
merely relaxed or qualified to the extent of sanctioning
such conveyances as receive the court's approval.  Con-

veyances without its approval fall within the ban of the restrictions. That the agency which is to approve or not is a state court is not material. It is the agency selected by Congress and the authority confided to it is to be exercised in giving effect to the will of Congress in respect of a matter within its control. Thus in a practical sense the court in exercising that authority acts as a federal agency; and this is recognized by the Supreme Court of the State. *Marcy* v. *Board of Commissioners,* 45 Oklahoma, 1. Plainly, the restrictions have the same force and operate in the same way as if Congress had selected another agency, exclusively federal, such as the Superintendent of the Five Civilized Tribes.

In cases presenting the question whether lands inherited from allottees by full-blood Indian heirs are freed from restrictions by § 9, and thus brought within another provision in the same act declaring that land "from which restrictions have been or shall be removed" shall be taxable and subject to other civil burdens, the Supreme Court of the State and the federal court of that district have both held that under the proviso such land remains restricted in the hands of the full-blood heirs, and so is not within the taxing provision. *Marcy* v. *Board of Commissioners, supra; United States* v. *Shock,* 187 Fed. Rep. 870.

Entertaining a like view of the proviso, we conclude that the land covered by the lease is still restricted land.

As to the other question this is the situation:

Under the Act of 1908, as already shown, leases of "restricted lands" for oil and gas mining may be made with the approval of the Secretary of the Interior, under regulations prescribed by him, "and not otherwise." The present lease was made and approved under that provision. The land was then restricted and the restrictions have not since been removed. Thus the event which the regulations and the lease declare shall terminate the supervision by the Secretary of the Interior of the

collection, care and disbursement of the royalties has not occurred. Nor has the occasion for some supervision disappeared. The heir is a full-blood Indian, as was the allottee, and is regarded by the act as in need of protection, as was the allottee. In the absence of some provision to the contrary the supervision naturally falls to the Secretary of the Interior. Rev. Stat., §§ 441, 463. *West* v. *Hitchcock*, 205 U. S. 80, 85. And see *Catholic Bishop of Nesqually* v. *Gibbon*, 158 U. S. 155, 166. There is nothing to the contrary in the leasing provision or in any other of which we are aware. True, it is possible under the proviso in § 9 for the heir, if the court approves, to sell and convey his interest in the land. But that has not been done, and it well may be that the heir will remain the owner until the restrictions expire in regular course—April 26, 1931. There is nothing in the proviso indicating that it is intended in the meantime to take from the Secretary or to commit to the court the supervision of matters pertaining to the lease or the royalties. A purpose to do that doubtless would be plainly expressed.

In this situation we think the authority of the Secretary of the Interior to supervise the collection, care and disbursement of the royalties has not terminated.

Criticism is made of some of the regulations, but all that are material here seem to be well within the limits of the Secretary's authority, and the acts of his representatives in respect of the lease and the royalties, so far as questioned here, seem to be well within the regulations.

It results that the original decree in the District Court was right and should stand, and that the second decree in that court and those in the Circuit Court of Appeals must be reversed.

*Decrees reversed.*