### WHITCHURCH v. BURGE et al. (UNITED STATES, Intervener).

No. 4612.

District Court, D. Oklahoma.

July 20, 1936.

Sigler & Jackson, of Ardmore, Okl., for plaintiff.

C. A. Summers, U. S. Atty., of Muskogee, Okl., for the United States, and for and on behalf of restricted Indian heirs, etc., of Hicks Palmer.

Harrell & Kerr, of Ada, Okl., for Skelly Oil Co., Fleetborn Oil Corporation, and North Central Texas Oil Co.

W. P. Z. German, of Tulsa, Okl., for Skelly Oil Co.

D. D. Brunson, King & Crawford, J. Wm. Crawford, Kemp & McArthur, and Jas. W. Hayes, all of Ada, Okl., Keller & Cameron, of Marietta, Okl., W. E. Utterback, of Durant, Okl., E. Moore, of Coalgate, Okl., Denver N. Davison, of Ada, Okl., and W. F. Rampendahl, of Muskogee, Okl., for other defendants.

WILLIAMS, District Judge.

This action having been commenced in the district court of Pontotoc county, Okl., on May 18, 1935, was removed to this court on petition of the United States of America upon proper order on July 2, 1935. There was duly allotted and patented to Elizabeth Brown, a full-blood member of the Chickasaw Tribe of Indians, Roll No. 47, as her homestead the following described land located in Pontotoc county, state of Oklahoma: North half of the northeast quarter, and the southeast quarter of the northeast quarter, of section 33; and the southwest quarter of the southeast quarter of section 32, all in township 2 north, range 7 east. The said Elizabeth Brown died during the year 1907, prior to the erection of the state of Oklahoma, leaving surviving as her next of kin and heirs at law the following named children: Rosa Bean and Phoebe Brown, daughters; Scott Brown, Andy Brown, and Charley Brown, sons (the last one born after March 4, 1906). Phoebe Brown died during the year 1919, while a minor, single, unmarried, and without issue. Andy Brown died during the year 1922, leaving as his sole and only heirs at law, Clara Brown, now Clara Gibson, wife of William Gibson, and one son, Wilson James Brown. Rosa Bean was enrolled as a full-blood Chickasaw Indian opposite Roll No. 48, and died on or about the ——— day of September, 1927, then owning and holding as an heir of said Elizabeth Brown an undivided one-fourth interest in the above-described land or homestead, leaving as her sole surviving heirs at law her husband, Hicks Palmer, and her brothers, Scott Brown and the said Charley Brown, and Wilson James Brown, son of Andy Brown, deceased. The said Charley Brown, one of the surviving heirs of the allottee Elizabeth Brown, is a full-blood Chickasaw Indian born subsequent to March 4, 1906. Hicks Palmer died on or about the 21st day of December, 1930. Watson Palmer, one of the defendants herein, is a full-brother of said Hicks Palmer, deceased. Hicks Palmer, deceased, was a full-blood member of the Choctaw Tribe, enrolled opposite Roll No. 11518. Watson Palmer is also an enrolled full-blood Choctaw Indian, and Elias Palmer and Wilson Palmer, sons of said Watson Palmer and nephews of Hicks Palmer deceased, are unenrolled full-blood Choctaw Indians. On February 6, 1935, Watson Palmer and his wife, Emma Palmer, executed what purported to be a warranty deed conveying to the plaintiff Clifford G. Whitchurch, an undivided one-sixteenth interest in and to said land, said deed having been filed for record in the office of the county clerk of Pontotoc county, Okl., on the 16th day of February, 1935, in Book 186 at page 503 of the records of said office. On August 20, 1935, there was filed for record in the office of the county clerk of Pontotoc county, Okl., in Book 196 at page 556, an instrument in writing purporting to be a contract executed by Watson Palmer and D. D. Brunson conveying a one-half interest of his interest in said land to said Brunson. It is stipulated that there is no controversy between the plaintiff and the defendant Watson Palmer and the defendants, as interpleaders, Wilson Palmer and Elias Palmer, or either of

them, as against the Skelly Oil Company, the Fleetborn Oil Corporation, and the North Central Texas Oil Company. On October 1, 1934, Clara Gibson, née Brown, joined by her husband, William Gibson, executed in favor of L. A. Boykin a mineral deed conveying to said L. A. Boykin an undivided 1/12 interest in and to all the oil, gas, and other minerals in and under said land, which was approved by the county court of Pontotoc county, Okl., and filed for record in Book 180 at page 163, in the office of the county clerk of Pontotoc county, Okl. On October 11, 1934, said L. A. Boykin executed a mineral deed thereto in favor of the Skelly Oil Company. On October 1, 1931, Scott Brown and Charley Brown, two of the heirs of Elizabeth Brown, Phoebe Brown, and Rosa Bean, above mentioned, joined by Vivian Brown, the wife of said Charley Brown, and by Levi Brown, the surviving husband of Elizabeth Brown, deceased, executed and delivered their warranty deed to John P. Crawford and Vol Crawford, conveying to them all their right, title, and interest in and to the said land above described, which said deed was approved by the county court of Pontotoc county on October 27, 1931, and was filed for record in the office of the county court of Pontotoc county and recorded in Book 147, at page 154. On October 11, 1934, the said John P. Crawford executed a quitclaim deed to Vol Crawford, conveying all his right, title, and interest in the above-described lands, which said deed was recorded in Book 182, at page 300, of the records of said county. On September 28, 1934, the said Vol Crawford, joined by his wife, Viola Crawford, executed a mineral deed to L. A. Boykin, conveying an undivided 15/120 interest in and to the oil, gas, and other minerals in the above described lands, which deed was recorded in the office of the county clerk of Pontotoc county in Book 179, at page 563. On October 1, 1934, L. A. Boykin executed a mineral deed to the Skelly Oil Company conveying to the Skelly Oil Company an undivided 15/120 interest in and to all the oil, gas, and other minerals in said land, which deed was recorded in the office of the county clerk of Pontotoc county in Book 180 at page 229. That by reason of the above-named conveyances the said Skelly Oil Company is now the owner of an undivided 5/24 interest in and to all the oil, gas, and other minerals lying in and under and that may be produced from the north half of the northeast quarter,

and southeast quarter of northeast quarter, of section 33, township 2 north, range 7 east. That on September 26, 1934, Vol Crawford, joined by his wife, Viola Crawford, executed to the North Central Texas Oil Company, Inc., a mineral deed conveying an undivided 1/24 interest in and to all of the oil, gas, and other minerals in and under and that may be produced from the lands described as the north half of the northeast quarter, and southeast quarter of northeast quarter, of section 33, township 2 north, range 7 east; said mineral deed being filed for record in the office of the county clerk of Pontotoc county and recorded in Book 179 at page 388, and by reason thereof the said North Central Texas Oil Company, Inc., is the legal and equitable owner of an undivided 1/24 interest in the mineral rights lying in and under the last above-described lands. That on October 1, 1931, Scott Brown and Charley Brown, joined by his wife, Vivian Brown, and one Levi Brown, the surviving husband of Elizabeth Brown, deceased, executed a warranty deed to John P. Crawford and Vol Crawford, conveying all their right, title, and interest in and to the north half of northeast quarter, and southeast quarter of northeast quarter, of section 33, and the southwest quarter of southeast quarter of section 32, township 2 north, range 7 east, which deed was approved by the county court of Pontotoc county on October 27, 1931, and recorded in Book 147, at page 154, of the records of said county, and re-recorded in Book 156, at page 446, of the records of said county. On February 3, 1933, John P. Crawford and Vol Crawford executed to R. W. Simpson an oil and gas lease covering all their right, title, and interest in the southwest quarter of southeast quarter of section 32, township 2 north, range 7 east, which said lease was filed for record and recorded in Book 155, at page 443, of the records of Pontotoc county; said oil and gas lease thereafter being assigned by the said R. W. Simpson on February 6, 1933, to the Fleetborn Oil Corporation; said assignment being recorded in Book 156, at page 280, of the records of said county. On February 3, 1933, John P. Crawford and Vol Crawford executed to said R. W. Simpson an oil and gas lease covering all of their right, title, and interest in and to the north half of northeast quarter, and southeast quarter of northeast quarter, of section 33, township 2 north, range 7 east, which said lease was recorded in Book 155, at page

445, of the records of Pontotoc county; and by assignment dated February 6, 1933, the said R. W. Simpson assigned said lease to the Fleetborn Oil Corporation, said assignment being recorded in Book 156, at page 279, of the records of said county. On February 11, 1933, Clara Gibson, née Brown, joined by her husband, William Gibson, executed and delivered to R. W. Simpson an oil and gas lease covering all her right, title, and interest in the north half of the northeast quarter, and southeast quarter of northeast quarter, of section 33, and southwest quarter of southeast quarter of section 32, township 2 north, range 7 east, said lease being recorded in Book 156, at page 250, of the records of Pontotoc county, and which lease was duly approved by the county court of Pontotoc county, Okl., on the 24th day of February, 1933; and said lease was thereafter on February 27, 1933, assigned by said R. W. Simpson to the Fleetborn Oil Corporation, which assignment is duly recorded in Book 156, at page 174, of the records of said county. On February 23, 1933, William Gibson, as guardian of the estate of Wilson James Brown, a minor, executed and delivered to R. W. Simpson an oil and gas mining lease covering all right, title, and interest of said Wilson James Brown in and to the north half of northeast quarter, and southeast quarter of northeast quarter of section 33, and the southwest quarter of southeast quarter of section 32, township 2 north, range 7 east, which said lease was duly approved by the county court of Pontotoc county on February 23, 1933, said lease being recorded in Book 156, at page 259, of the records of said county. Thereafter on March 1, 1933, said R. W. Simpson assigned said lease to the Fleetborn Oil Corporation, said assignment being recorded in Book 156, at page 278, of the records of said county. Under and by virtue of said oil and gas leases above mentioned and the assignments thereof, the Fleetborn Oil Corporation is the owner and holder of an oil and gas leasehold estate covering the interests formerly owned by Andy Brown, Scott Brown, Charley Brown, Wilson James Brown, Levi Brown, and the interests inherited by them from Rosa Bean and Phoebe Brown, and none other.

Neither the deed in favor of the plaintiff Whitchurch, nor the contract in favor of the defendant Brunson, was approved by the Secretary of the Interior or any county court. The only controversy here for consideration and determination is as to an undivided one-eighth interest in the lands allotted as a homestead to Elizabeth Brown, deceased, the question being as to whether the deed executed by Watson Palmer in favor of the plaintiff Clifford G. Whitchurch for an undivided one-sixteenth interest and the contract executed by Watson Palmer for a half interest in his inheritance therein in favor of the defendant D. D. Brunson are invalid as not having been approved by the proper court or any other federal agency, it being contended on the part of the intervener, United States of America, that same was executed in violation of restrictions imposed by acts of Congress applicable thereto, and that both should be cancelled. Further that the said deed and contract should be set aside and canceled on the ground they were procured by fraud.

Section 9 of the Act of Congress of May 27, 1908 (35 Stat.L. 312, 315), is as follows: "That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee: Provided further, That if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March fourth, nineteen hundred and six, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof, for the use and support of such issue, during their life or lives, until April twenty-sixth, nineteen hundred and thirty-one; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from all restrictions; if this be not done, or in the event the issue hereinbefore provided for die before April twenty-sixth, nineteen hundred and thirty-one, the land shall then descend to the heirs, according to the laws of descent and distribution of the State of Oklahoma, free from all restrictions."

As amended by Act of April 12, 1926 (44 Stat. 239), said section was extended so that the first proviso relating to conveyances by full-blood heirs included con-

veyances by full-blood devisees. As amended it provided as follows: "The death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That hereafter no conveyance by any full-blood Indian of the Five Civilized Tribes of any interest in lands restricted by section 1 of this Act acquired by inheritance *or devise* [italics mine] from an allottee of such lands shall be valid unless approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee or testator: Provided further, That if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March 4, 1906, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior for the use and support of such issue, during their life or lives, until April 26, 1931; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from restrictions; if this be not done, or in the event the issue hereinabove provided for die before April 26, 1931, the land shall then descend to the heirs, according to the laws of descent and distribution of the State of Oklahoma, free from all restrictions: Provided, That the word 'issue' as used in this section shall be construed to mean child or children: Provided further, That the provisions of section 23 of the Act of April 26, 1906, as amended by this Act, are hereby made applicable to all wills executed under this section."

In Parker v. Richard, 250 U.S. 235, 238, 39 S.Ct. 442, 444, 63 L.Ed. 954, it is said: "In exact words it puts full-blood Indian heirs in a distinct and excepted class and forbids any conveyance of any interest of such an heir in such land unless it be approved by the court named. In other words, as to that class of heirs the restrictions are not removed but merely relaxed or qualified to the extent of sanctioning such conveyances as receive the court's approval. Conveyances without its approval fall within the ban of the restrictions."

In the second proviso, homestead allotments of deceased allottees of one-half or more Indian blood, where such allottee leaves issue born after March 4, 1906, remain restricted and inalienable for the use and support of such issue during his, her, or their lifetime but not beyond April 26, 1931.

Section 1 of Act of May 10, 1928 (45 Stat. 495), extends restrictions against alienation, lease, mortgage, or other encumbrance of the lands allotted to members of the Five Civilized Tribes in Oklahoma, enrolled as of one-half or more Indian blood, for an additional period of twenty-five years from and including April 26, 1931; with the proviso that the Secretary of the Interior shall have the authority to remove the restrictions, upon the applications of the Indian owners of the land, and may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe. In section 2 thereof the provisions of section 9 of Act of May 27, 1908 (35 Stat. 312), entitled: "An Act For the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes, and for other purposes," as amended by section 1 of the Act of April 12, 1926 (44 Stat. 239), entitled "An Act To amend section 9 of the Act of May 27, 1908 (Thirty-fifth Statutes at Large, page 312), and for putting in force, in reference to suits involving Indian titles, the statutes of limitations of the State of Oklahoma, and providing for the United States to join in certain actions, and for making judgments binding on all parties, and for other purposes," be, and are hereby extended and continued in force for a period of twenty-five years from and including April 26, 1931, except, however, the provisions thereof which read as follows: "'Provided further, That if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March 4, 1906, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior for the use and support of such issue, during their life or lives, until April 26, 1931; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from restrictions; if this be not done, or in the event the issue hereinabove provided for die before April 26, 1931, the lands shall then descend to the heirs, according to the laws of descent and distribution of the State of Oklahoma, free from all restrictions: Provided, That the word "issue," as used in this section, shall

be construed to mean child or children: Provided further, That the provisions of section 23 of the Act of April 26, 1906, as amended by this Act, are hereby made applicable to all wills executed under this section:' *which quoted provisions be, and the same are, repealed, effective April 26, 1931:* [italics mine] Provided further, That the provisions of section 23 of the Act of Congress approved April 26, 1906, (Thirty-fourth Statutes at Large, page 137), as amended by the provisions of section 8 of the Act of Congress approved May 27, 1908 (Thirty-fifth Statutes at Large, page 312), be, and the same are hereby continued in force and effect until April 26, 1956." By the repeal of said provision effective April 26, 1931, the homestead then became subject to the provisions of Act of May 27, 1908 (35 Stat. 312), as amended by act of April 12, 1926, and May 10, 1928, subject to restriction under the terms of Act of April 12, 1926, being extended for the period of 25 years from and including April 26, 1931. Construing section 8 of Act of January 27, 1933, c. 23, 47 Stat. 779, and section 1 of Act of May 10, 1928, 45 Stat. 495, such homestead of an enrolled full-blood Indian inherited by full-blood heirs effective on April 26, 1931, but such inheritance taking effect not under the said provision which was repealed effective of that date, but under the other provisions of Act of May 27, 1908, as amended by Act of April 12, 1926, and May 10, 1928, and January 27, 1933, said land was and is restricted as of the dates of the deed and the contract here under consideration. By said section 2 of said Act of May 10, 1928, said section 9 of Act of May 27, 1908, as amended by section 1, Act April 12, 1926, relating to approval by the county court of all conveyances by full-blood Indians as to such inherited lands, is extended and continued in force for a period of 25 years from and including April 26, 1931. The second proviso of section 9 of Act of May 27, 1908, as amended by section 1 of Act of April 12, 1926, relating to issue surviving born since March 4, 1906, and providing for the use and occupancy of the homestead for such issue during his or her their lives until April 26, 1931, is expressly repealed by section 2 of Act of May 10, 1928, effective April 26, 1931.

Section 1, Act of January 27, 1933 (H. R. 8750), entitled "An Act Relative to restrictions applicable to Indians of the Five Civilized Tribes in Oklahoma," provides:

"That all funds and other securities now held by or which may hereafter come under the supervision of the Secretary of the Interior, belonging to and only so long as belonging to Indians of the Five Civilized Tribes in Oklahoma of one-half or more Indian blood, enrolled or unenrolled, are hereby declared to be restricted and shall remain subject to the jurisdiction of said Secretary until April 26, 1956, subject to expenditure in the meantime for the use and benefit of the individual Indians to whom such funds and securities belong, under such rules and regulations as said Secretary may prescribe: Provided, That where the entire interest in any tract of restricted and tax-exempt land belonging to members of the Five Civilized Tribes is acquired by inheritance, devise, gift, or purchase, with restricted funds, by or for restricted Indians, such lands shall remain restricted and tax-exempt during the life of and as long as held by such restricted Indians, but not longer than April 26, 1956, unless the restrictions are removed in the meantime in the manner provided by law: Provided further, That such restricted and tax-exempt land held by anyone, acquired as herein provided, shall not exceed one hundred and sixty acres: And provided further, That all minerals including oil and gas, produced from said land so acquired shall be subject to all State and Federal taxes as provided in section 3 of the Act approved May 10, 1928 (45 Stat. L. 495)." See King v. Ickes, 62 App.D.C. 83, 64 F.(2d) 979; Holmes v. United States (C.C.A.) 53 F.(2d) 960; Kiker v. United States (C.C.A.) 63 F.(2d) 957.

The first proviso of Act of May 27, 1908, covered only interests of full-blood Indian heirs acquired by descent and not by devise. United States v. Fooshee et al. (C.C.A.8) 225 F. 521. By section 1 of Act approved April 12, 1926 (44 Stat. 239), amending section 9 of Act of May 27, 1908, 35 Stat. 312, 315) it is provided: "That hereafter no conveyance by any full-blood Indian of the Five Civilized Tribes of any interest in lands restricted by section 1 of this Act acquired by inheritance or *devise* from an allottee of such lands shall be valid unless approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee or *testator.*" (Italics mine.)

Congress thus extended and made more comprehensive said act so as to protect the full-blood Indian in land acquired not only

by inheritance but also by devise. In some instances through designing manipulation the full-blood allottee was induced by will to devise his allotment to his full-blood children or next of kin and to secure its approval by the proper federal agency and then after the death of such testator or testatrix and the probating of the will restrictions thereon having ceased as to such inherited land, opportunity for its dissipation was afforded. By this provision such practice was circumvented and supervision of the government through its federal agency continued. The purpose of Act of May 10, 1928, was to extend the period of restrictions on lands of said members of the Five Civilized Tribes for an additional period of 25 years from and including April 26, 1931. Section 3 of said act relates not only to restricted allotted lands of members of the Five Civilized Tribes, but also to inherited restricted lands of full-blood Indian heirs or devisees of such land. Section 5 thereof declares that said act does not have the effect of reimposing restrictions theretofore or hereafter removed by the Secretary of the Interior or by operation of law, nor to exempt from taxation any lands which are subject to taxation under existing law, and shall not be so construed. Act of January 27, 1933, contains no such precautions or legislative declaration. Its context clearly indicates that it was the purpose of Congress to tighten up and extend restrictions for the protection of full-blood heirs and restricted Indians. It is not essential to determine whether Acts of May 27, 1908, April 12, 1926, and May 10, 1928, confined the restriction to the immediate heir of the allottee. The language in said section 8 of Act of January 27, 1933 (47 Stat. 779), in comprehensive, mandatory, and prohibitory terms provided: "That it shall be the duty of the attorneys provided for under the Act of May 27, 1908 (35 Stat.L. 312), to appear and represent any restricted member of the Five Civilized Tribes before the county courts of any county in the State of Oklahoma, or before any appellate court thereof, *in any matter in which said restricted Indians may have an interest, and no conveyance of any interest in land of any full-blood Indian heir shall be valid unless approved in open court* [italics mine] after notice in accordance with the rules of procedure in probate matters adopted by the Supreme Court of Oklahoma in June of 1914, and said attorneys shall have the right to appeal from the decision of any county court approving the sale of any interest in land, to the district court of the district to which the county is a part." This Act of January 27, 1933, contains no declaratory provision that it should not have the effect of reimposing restrictions. It was dealing with lands allotted to members of the Five Civilized Tribes and related to members of said tribes, enrolled and unenrolled. The context of this act does not indicate any purpose to restrict it to the immediate heir or heirs of the original allottee.

The allottee here was a full-blood, and every intervening heir as to the interest here involved was a full-blood. The conveyance and the contract here involved was from an intervening full-blood heir and comes within the restriction, and for that reason not only the deed from Watson Palmer to the plaintiff but also the contract from Watson Palmer to the defendant Brunson are void. But the intervener, the United States of America, also seeks to have said conveyances also set aside as being void, for the reason that the said Watson Palmer was incompetent not only in fact but also in law, and that the same were fraudulently secured. It is not only alleged, but it has been proved by competent evidence, that at the time of the execution of the deed and the contract made profert of by the respective plaintiff and defendant that the said Watson Palmer was an habitual drunkard and that they each had knowledge of such fact. It is asserted that the said Watson Palmer was overreached and unduly persuaded and induced to execute said conveyance and said contract, and that said instruments are void and clouds upon this title. The said intervener has tendered and paid into court the said sum of $250 which was paid by the said plaintiff Whitchurch to the said Watson Palmer. The intervener United States of America and the said Watson Palmer seek to cancel said instruments upon the grounds of such fraud and grossly inadequate consideration. As to the contract that was intended to cover representation as attorney, my understanding is that the said D. D. Brunson does not insist upon the contract other than to show his employment and right to a reasonable attorney's fee, and so that contract will be canceled without prejudice to any right he may have for an attorney's fee in the matter. As to the plaintiff Whitchurch the sole consideration for his deed was $250. I find that the consideration is grossly in-

adequate and at the time it was acquired the said Watson Palmer was a drunkard and utterly incompetent, and that the plaintiff had knowledge of such facts and that his agent knew it, and that Watson Palmer was incompetent to manage his business affairs and was grossly ignorant of the value of the property and value of real estate and of money, and that he was such a person as would make an improvident disposition of his property and would be unduly influenced by designing persons who might gain an influence over him, and that the said Whitchurch and his agent knew of such condition. I find that the fair preponderance of the evidence conclusively shows that at the time said deed was executed Watson Palmer was wholly incompetent. The evidence shows that Watson Palmer was a full-blood restricted Indian forty-one years of age, unable to speak the English language and it was necessary to have an interpreter; that he could scarcely write and has very little education; neither knows how to spell nor to add, and had no experience in business affairs; does not know the value of property or understand or know the location of his property; that he is addicted to the excessive use of intoxicating liquors and has used the same to excess for many years when they are available and gets drunk whenever he can get it, and at the time of the execution of the deed in favor of plaintiff that the said Watson Palmer did not understand or realize that he was conveying such interest in his property, but that he thought it was a lease; that he had no knowledge of the property involved or that it is located near oil wells; that he had not been on the property and had not been informed by any one of its true value or consideration, and that he did not understand the contents of the deed nor were they explained to him. I find that he was incompetent and incapable of handling and managing said property and his own affairs. Neither the said Whitchurch nor the said D. D. Brunson offered any evidence on this issue in this case. The evidence shows that said property had a lease value of $600 per acre at the time this deed was executed, and at the time of this trial had a lease value of approximately $300 per acre, and that the royalty value of said property was of very great value.

Therefore, I find that Watson Palmer was incompetent and incapable of managing his own affairs and to care for, manage, and

dispose of the proceeds thereof, and by reason of his incompetency he is easily influenced and persuaded and can easily be overreached, and that said deed should be canceled and the said $250 be paid back to the said plaintiff. I find that the contract in favor of D. D. Brunson is void on account of restrictions and incompetency, but that it may be treated as evidence of his employment as attorney in the case, and to that extent it is limited.