**UNITED STATES v. WATASHE et al.**

No. 2203.

Circuit Court of Appeals, Tenth Circuit.

Feb. 24, 1941.

Jacob N. Wasserman, Atty., Dept. of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Whitfield Y. Mauzy, U. S. Atty., of Tulsa, Okl., and Charles R. Denny, Jr., Atty., Dept. of Justice, of Washington, D. C., on the brief), for the United States.

James J. Mars and John R. Miller, both of Sapulpa, Okl. (L. O. Lytle and Roy T. Wildman, both of Sapulpa, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Watashe, a full-blood Creek allottee, died intestate June 26, 1937, seized and possessed of 80 acres of restricted tax-exempt land. He left surviving him six children, Wiley Watashe, Eliza Watashe Esmond, Lofahye Watashe, Barney Watashe, James Watashe, and Martha Watashe Dunn, all of whom are full-blood Creek Indians, and four grandchildren, Nancy Watashe Roland, Johnny Watashe, Lucille Watashe, and Jessie Watashe, all of whom are half-blood Creek Indians. Each child inherited an undivided one-seventh interest and each grandchild inherited an undivided one-twenty-eighth interest in the land.

The full-blood heirs instituted a suit in partition against the half-blood heirs in the district court of Creek County, Oklahoma. Written notice of the pendency of the suit was served upon the Superintendent of the Five Civilized Tribes in conformity with § 3 of the Act of April 12, 1926, 44 Stat. 240, and thereupon the United States caused the suit to be removed to the United States District Court for the Northern District of Oklahoma. The United States filed a motion to dismiss the complaint in partition on the ground that neither the state nor the federal court had jurisdiction to partition the land. The motion was denied. Thereupon, the United States filed its intervening complaint wherein it challenged the court's jurisdiction on the ground that the interests of the half-blood defendants were restricted and that the restrictions could only be removed by the Secretary of the Interior. The court entered an order appointing commissioners to partition the land in kind in the event they determined it was feasible so to do. The commissioners reported that the land could not be partitioned in kind. From a judgment appointing a special master and directing him to make sale of the land, the United States has appealed.

By the provisions of § 1 of the Act of May 27, 1908, 35 Stat. 312, all lands of mixed-blood Indians having less than half Indian blood, and all lands, except homesteads, of mixed-blood Indians having half or more than half and less than three-quarters Indian blood, were freed from restrictions.

By the provisions of § 9 of that Act, the death of an allottee operated to remove all restrictions upon the alienation of allotted land, except that qualified restrictions were continued as to the interest of a full-blood Indian heir in such land.[1] By the amendment of April 12, 1926, 44 Stat. 239, the qualified restrictions were enlarged so as to embrace the interest in lands acquired from an allottee, by a full-blood Indian devisee.

By the provisions of the Act of January 27, 1933, 47 Stat. 777, where the entire interest in any tract of restricted and tax-exempt land belonging to members of the Five Civilized Tribes is acquired by inheritance by restricted Indians, such land remains restricted and tax-exempt during the life of and as long as held by such restricted Indians, but not longer than April 26, 1956, "unless the restrictions are removed in the meantime in the manner provided by law." Glenn v. Lewis, 10 Cir., 105 F.2d 398, certiorari denied 308 U.S. 598, 60 S.Ct. 130, 84 L. Ed. 501.

■ The interests of the grandchildren were, therefore, restricted by the provisions of the Act of January 27, 1933.

■ By the provisions of § 2 of the Act of June 14, 1918, 40 Stat. 606, 25 U.S.C.A. § 355, the lands of full-blood members of the Five Civilized Tribes are made subject to the laws of the state of Oklahoma providing for the partition of real estate, and a sale under partition operates to "relieve the land * * * of all restrictions of every character." We held in United States v. Bond, 10 Cir., 108 F.2d 504, that the provisions of the Act of January 27, 1933, did not take away from the Oklahoma courts, jurisdiction to partition restricted and tax-exempt land in the hands of full-blood Indian devisees, and that the provision in § 1 thereof, "unless the restrictions are removed in the meantime in the manner provided by law," embraces removal of restrictions by partition.

At the time of the enactment of the Act of January 27, 1933, the courts of Oklahoma had jurisdiction to partition inherited lands of Indians of less than full-blood, Salmon v. Johnson, 78 Okl. 182, 189 P. 537, certiorari denied, 254 U.S. 641, 41 S.Ct. 13, 65 L.Ed. 452, and we think the inclusion of the above-quoted provision in that Act, manifest an intention on the part of Congress not to deprive the Oklahoma courts of that jurisdiction.

■ It is urged that the Act of June 14, 1918, 25 U.S.C.A. §§ 355, 375, does not in terms embrace half-blood Indian heirs, and that partition is not a manner provided by law for the removal of restrictions within the meaning of the above-quoted provision. If this contention be sound, then the lands of half-blood heirs are subject to more rigid restrictions than the lands of full-blood heirs. This is contrary to the manifest purpose of Congress to liberalize restrictions respecting the lands of Indian heirs of less than full-blood. From the time of the enactment of the Act of May 27, 1908, down to the enactment of the Act of January 27, 1933, lands acquired from an allottee through inheritance or devise, by less than full-blood Indian heirs, were freed of restrictions. By the Act of January 27, 1933, for the first time since 1908, restrictions were imposed upon the lands of half-blood Indian heirs. Therefore, when the Act of 1933 was enacted, there was no method provided by law for the removal of restrictions from lands in the hands of less than full-blood Indians. Hence, it follows, we think, that the quoted provision in the Act of January 27, 1933, must refer to the methods for removal of restrictions from full-blood Indians. One such method is by partition. Had Congress intended to limit the manner of removal of restrictions to the action of the Secretary of the Interior, as urged by counsel for the United States, it is reasonable to assume that it would have manifest its intent by express language rather than by the general language "in the manner provided by law."

It is further urged that this construction brings within the quoted provision the method provided for the removal of restrictions from lands acquired from an allottee by full-blood Indian heirs or devisees in § 9 of the Act of May 27, 1908, as amended by the Act of April 12, 1926. We deem it unnecessary to pass on that question. It may be observed, however, that § 9 provides for the removal of qualified restrictions rather than general restrictions, and it might be urged that Congress did not

---

[1] Holmes v. United States, 10 Cir., 53 F.2d 960, 961;

United States v. Gypsy Oil Company, 8 Cir., 10 F.2d 487, 489;

Parker v. Richard, 250 U.S. 235, 238, 39 S.Ct. 442, 63 L.Ed. 954.

A conveyance by a full-blood Indian heir or devisee may only be made with the approval of the county court having jurisdiction of the estate of the deceased allottee or testator.

intend to embrace methods other than those for the removal of general restrictions.

We conclude that the judgment below was right and it is, therefore, affirmed.