## UNITED STATES v. HELLARD.

### No. 2703.

Circuit Court of Appeals, Tenth Circuit.

Oct. 29, 1943.

Marvin J. Sonosky, Atty., Department of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Whitfield Y. Mauzy, U. S. Atty., of Tulsa, Okl., and Norman MacDonald, Atty., Department of Justice, of Washington, D. C., on the brief), for appellant.

George H. Jennings, of Sapulpa, Okl., for appellée.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

The question presented is whether the full-blood Creek Indian owners of a tract of restricted and tax-exempt land in Oklahoma were divested of title by a sale in partition in an action in the state court to which the United States was not a party.

The land was allotted to an enrolled Creek Indian of the full blood, and it was subsequently selected and certified as tax-exempt under the provisions of section 4 of the Act of May 10, 1928, 45 Stat. 495. The allottee died intestate in 1938, and the land descended in equal shares to her son, grandson, and great granddaughter. The son died, and his interest passed to his surviving widow and four children. All of the heirs of the allottee and those of her son were full-blood Creek Indians. In 1940, certain of the heirs instituted in the district court of the state a proceeding to partition the land. All of the heirs were parties but the United States was not, and no notice was served on the Superintendent of the Five Civilized Tribes under the provisions of section 3 of the Act of April 12, 1926, 44 Stat. 239. A judgment of partition was entered, pursuant thereto the land was sold by the sheriff, and D. B. Hellard became the purchaser. Hellard later instituted in the state court this action against the Indian heirs to quiet his title based upon the sheriff's deed. The Indians disclaimed. Notice was served on the Superintendent of the Five Civilized Tribes, the United States caused the action to be removed to the United States court and later intervened, alleging that the proceedings in partition were void because the United States was not a party to the action, and praying that the sheriff's deed be cancelled and the title of the Indian heirs quieted. The trial court entered judgment quieting title in Hellard, and the United States appealed.

Section 19 of the Act of April 26, 1906, 34 Stat. 137, provides that no full-blood Indian of the Choctaw, Chicasaw, Cherokee,

Creek, or Seminole Tribes shall have power to sell, alienate, or dispose of any of the land allotted to him for a period of twenty-five years from and after the passage of the act, unless such restriction shall prior to the expiration of that period be removed by Act of Congress; and section 22 provides that the adult heirs of any deceased Indian of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his share of the land of the tribe to which he belongs, may sell and convey the land inherited from such decedent, but that all conveyances made under the provision by heirs who are full-blood Indians shall be subject to the approval of the Secretary of the Interior, under such rules and regulations as may be prescribed by him. Section 1 of the Act of May 27, 1908, 35 Stat. 312, provides among other things that all allotted lands of enrolled, full-blood members of the Five Civilized Tribes shall not be subject to alienation prior to April 26, 1931, except that the Secretary may remove such restrictions in whole or in part, under such rules and regulations as he may prescribe; and section 9, as amended by section 1 of the Act of April 12, 1926, supra, provides that the death of an allottee shall operate to remove all restrictions upon the alienation of such allottee's land, provided that no conveyance by any full-blood Indian of such Tribes of any lands restricted by section 1 acquired by inheritance or devise from the allottee shall be valid unless approved by the county court having jurisdiction of the settlement of the estate of such deceased allottee or testator. And section 1 of the Act of January 27, 1933, 47 Stat. 777, provides that where the entire interest in any tract of restricted and tax-exempt land belonging to members of the Five Civilized Tribes is acquired by inheritance, devise, gift, or purchase with restricted funds, by or for restricted Indians, such land shall remain restricted and tax-exempt during the life of and as long as it is held by such Indians, but not longer than April 26, 1956. It is clear that under these acts, without more, the district courts in Oklahoma would be without jurisdiction to partition restricted and tax-exempt land acquired through inheritance by full-blood members of the Five Civilized Tribes. Coleman v. Battiest, 65 Okl. 71, 162 P. 786; Hoodenpyl v. Champion, 71 Okl. 270, 177 P. 369.

■ But, recognizing the frequent need to partition land acquired in that manner, the Congress enacted the Act of June 14, 1918, 40 Stat. 606. Section 1 authorizes the probate court in Oklahoma having jurisdiction of the settlement of the estate of a deceased allottee, leaving restricted heirs, to determine the question of heirship; and section 2 provides that the lands of full-blood members of any of the Tribes are made subject to the laws of the state respecting the partition of real estate, and that in case of a sale under a decree, or partition, the conveyance shall operate to relieve the land of all restrictions of every character. Under that statute the district courts of the state have jurisdiction to partition restricted lands acquired through inheritance by full-blood Indian heirs. Salmon v. Johnson, 78 Okl. 182, 189 P. 537, certiorari denied 254 U.S. 641, 41 S.Ct. 13, 65 L.Ed. 452; Haymes v. McDermott, 125 Okl. 147, 256 P. 908; United States v. Bond, 10 Cir., 108 F.2d 504; United States v. Watashe, 10 Cir., 117 F.2d 947.

■■ The proceedings in the action for partition are not before us but it is stipulated that they were in strict accord with the statutes of the state. The decree in that action and the conveyance executed by the sheriff pursuant to it are attacked on the sole ground that the United States was not a party to the action. The Act of June 14, 1918, supra, does not provide that the United States shall be made a party to an action for partition. It does not speak of making the United States a party. It is significantly silent in that respect. It appears on its face to be a complete enactment, subjects lands of the nature here involved to the jurisdiction of the district courts of the state for purposes of partition, and provides that a sale made in a partition action shall free the lands of all restrictions. Yet it will be searched in vain for any provision, suggestion, or indication of a Congressional intent or purpose to require that the United States shall be made a party to such an action. Congress has plenary power to impose, extend, or remove restrictions against the alienation of property belonging to full-blood members of the Five Civilized Tribes. The determination of the time and manner of imposing or removing restrictions rests with Congress. It was well within the sweep of the power of Congress to provide that lands belonging to full-blood members of the Tribes shall be subject to partition in the state courts, and that a sale made in a proceeding of that nature shall operate to remove all existing restrictions against

alienation, without the United States being a party to the action. Hy-yu-tse-mil-kin v. Smith, 194 U.S. 401, 24 S.Ct. 676, 48 L.Ed. 1039; Winton v. Amos, 255 U.S. 373, 41 S.Ct. 342, 65 L.Ed. 684. And Congress was free to entrust to the state courts having jurisdiction to partition lands generally the function of determining in a judicial proceeding in partition whether the land shall be sold, and if so to order the sale, and provide that when such sale is made it shall constitute a removal of the restrictions against alienation. In short, Congress was free to select the district courts of the state as the agency and confide to them authority to determine in that manner whether the restrictions shall be extinguished. Parker v. Richard, 250 U.S. 235, 39 S.Ct. 442, 63 L.Ed. 954; Whitebird v. Eagle-Picher Lead Co., 10 Cir., 40 F.2d 479. Taking into consideration the context, the background, and the purpose to be served, we think that is the effect of the statute. Cf. Parker v. Richard, supra; Whitebird v. Eagle-Picher Lead Co., supra; State v. Huser, 76 Okl. 130, 184 P. 113.

As already indicated, section 1 of the Act of June 14, 1918, supra, authorizes the probate court of the state having jurisdiction of the settlement of the estate of a deceased allottee, leaving restricted heirs, to determine the question of heirship, with conclusive effect; section 9 of the Act of May 27, 1908, as amended by the Act of April 12, 1926, supra, provides that the death of an allottee shall operate to remove all restrictions upon the alienation of such allottee's land, but no conveyance by a full-blood Indian of land restricted by section 1, acquired by inheritance or devise from the allottee, shall be valid unless approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee or testator; and section 8 of the Act of January 27, 1933, supra, provides that no conveyance of any interest in land of a full-blood Indian heir shall be valid unless approved by the county court. Are proceedings under these acts void unless the United States is joined as a party or given notice? It has never been so understood. In such instances the United States is represented by its chosen instrumentality —the county court. Parker v. Richard, supra; Whitebird v. Eagle-Picher Lead Co., supra. Similarly, in an action in partition under the Act of June 14, 1918, supra, the interests of the United States are entrusted to an instrumentality of its own choice—the district court of the state.

That conclusion finds support in another consideration. At the time of the enactment of the statute there was no way under general law in which the United States could be joined in an action of that kind in the state court. Stanley v. Schwalby, 162 U.S. 255, 16 S.Ct. 754, 40 L.Ed. 960; State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235. And there was then no provision of law authorizing the giving of notice to the United States in such manner that it would be bound by the judgment in such an action. It was not until the enactment of the Act of April 12, 1926, supra, that provision was made for the giving of notice with binding effect. Caesar v. Burgess, 10 Cir., 103 F.2d 503. To sustain the contention that the judgment in the partition action and the conveyance executed pursuant to it were void for the reason that the United States was not a party to the action would be tantamount to holding that the Act of June 14, 1918, was without any operative force and effect up to the enactment of the Act of April 12, 1926; in short, that during that time it was nothing less than nugatory, and its enactment only a futile gesture. It should not be construed in that manner if it is reasonably susceptible of a construction which will give it vitality from its inception.

The Government places strong reliance upon State of Minnesota v. United States, supra. But the case is decisively different. That was an action instituted in the state court to acquire by condemnation for highway purposes certain lands allotted in severalty to Chippewa Indians by trust patents. The United States was named as a party defendant, and the action was removed to the United States court. Appearing specially, the United States moved to dismiss on the ground that it had not consented to be sued and that the state court had no jurisdiction of the action or over the United States. Both contentions were sustained. But the statute there considered merely provided that lands allotted in severalty to Indians may be condemned for any public purpose under the laws of the state where located in the same manner as land owned in fee may be condemned, and that the money awarded as damages shall be paid to the allottee. It did not provide that the state court shall have jurisdiction of an action to condemn

such lands. Here the act expressly consents that the state courts shall have jurisdiction in an action for partition. There the statute did not authorize a suit in the state court. Instead, it merely authorized condemnation for any public purpose under the laws of the state. Here the statute does much more than merely provide that lands may be partitioned in the same manner as other lands are partitioned under the laws of the state. It expressly and unqualifiedly subjects them to the laws of the state for the purpose of partition, which means subjecting them to the jurisdiction of the state courts for that purpose.

Finally, it is said that if the courts sanction a procedure which permits litigants to maintain with success two suits affecting lands of this character, the first to partition and the second to quiet title based upon the title acquired in the former, and notify the United States only in the latter, the United States will be denied any opportunity to be heard on important questions. But the matter is one for Congress, not for the courts to add to the statute something which Congress in the exercise of its discretion omitted.

The judgment is affirmed.