## McFADDIN v. EVANS–SNIDER–BUEL COMPANY.

ERROR TO THE CIRCUIT COURT ÒF APPEALS FOR THE EIGHTH CIR-
CUIT.

No. 217. Argued April 10, 11, 1902.—Decided May 19, 1902.

The judgment of the Circuit Court of Appeals, sustaining the act of February 3, 1897, which provided that "section 4742 of Mansfield's Digest of the Laws of Arkansas, heretofore put in force in the Indian Territory, is hereby amended by adding to said section the following: Provided that if the mortgagor is a non-resident of the Indian Territory, the mortgage shall be recorded in the judicial district in which the property is situated at the time the mortgage is executed. All mortgages of personal property in the Indian Territory heretofore executed and recorded in the judicial district thereof in which the property was situated at the time they were executed are hereby validated," is sound as applicable to this case.

The plain purpose of Congress was to give effect to mortgages of non-residents, which had been, before the passage of the act, recorded in the judicial district in which the property was situated at the time the mortgages were executed.

The act as so construed and applied was a valid exercise of Congressional power, and in circumstances like those of the present case, cannot be justly impugned as depriving the attaching creditor of property within the meaning of the Constitution.

The power of a legislature to pass laws giving validity which was before ineffectual, is well settled.

IN the United States Court for the Northern District of the Indian Territory, in April, 1897, an issue was tried between the Evans-Snider-Buel Company, a corporation organized under the laws of the State of Illinois, and William McFaddin & Son. One J. R. Blocker was the owner and in possession of 6775 head of cattle pasturing in the Indian Territory. McFaddin & Son were judgment creditors of Blocker, and, as such, levied an attachment on said cattle. The Evans-Snider-Buel Company filed a proceeding by way of interpleader in the attachment suit, claiming to have a prior lien on said cattle by means of certain mortgages given by said Blocker, who, as shown by the mortgages themselves, as well as the testimony in the case, was a

resident of Bexar County, Texas, in which county some of the mortgages relied on had been duly executed and recorded. The cattle in question were grazing in the Creek Nation, Indian Territory, and the mortgages were again recorded in the Northern District of the Indian Territory, at Muskogee and in the Creek Nation. The cattle at the time of the levy were in the possession of Blocker, the mortgagor.

After the filing of the interpleader, and on January 29, 1897, a judgment was entered against the defendant Blocker, in the sum of $55,875.71, and sustaining the attachment. There were several trials in the case, but at the last trial in the Northern District, where the plaintiffs, McFaddin & Son, for the second time lost their suit, it was agreed that in case the judgment should be reversed by the United States Court of Appeals for the Indian Territory, judgment should be rendered against the Evans-Snider-Buel Company, the interpleader. The judgment was reversed by that court, and, pursuant to said agreement, on the 4th day of January, 1900, judgment was entered against the interpleader and its bondsmen for the sum of $72,250.35. From that judgment the interpleader prosecuted its writ of error to the United States Court of Appeals for the Eighth Circuit.

At the time the attachment was levied upon the cattle in controversy the following laws in relation to the registration of chattel mortgages were in force in the Indian Territory, being sections 4742 and 4743 of Mansfield's Digest:

"SEC. 4742. All mortgages, whether for real or personal estate, shall be proved or acknowledged in the same manner that deeds for the conveyance of real estate are now required by law to be proved or acknowledged; and when so proved or acknowledged shall be recorded—if for lands, in the county or counties in which the lands lie, and if for personal property, in the county in which the mortgagor resides.

"SEC. 4743. Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property, from the time the same is filed in the recorder's office for record, and not before; which filing shall be notice to all persons of the existence of such mortgage."

As before stated, the attachment in this case was sustained on the 29th day of January, 1897. On February 3, 1897, Congress amended the law above quoted by an enactment which reads as follows:

" Section 4742 of Mansfield's Digest of the Laws of Arkansas, heretofore put in force in the Indian Territory, is hereby amended by adding to said section the following: Provided, that if the mortgagor is a non-resident of the Indian Territory the mortgage shall be recorded in the judicial district in which the property is situated at the time the mortgage is executed. All mortgages of personal property in the Indian Territory heretofore executed and recorded in the judicial district thereof in which the property was situated at the time they were executed are hereby validated." Stat. 1896–7, p. 510.

On November 19, 1900, the United States Circuit Court of Appeals for the Eighth Circuit filed an opinion and judgment, Sanborn, J., dissenting, reversing the judgment of the United States Court of Appeals in the Indian Territory, and affirming the judgment of the United States Court for the Northern District of the Indian Territory. Whereupon a writ of error was allowed and the cause brought to this court.

*Mr. William T. Hutchings* for plaintiffs in error. *Mr. J. P. Clayton* and *Mr. Napoleon B. Maxey* were on his brief.

*Mr. H. M. Pollard* and *Mr. U. M. Rose* for defendant in error. *Mr. W. E. Hemingway* was on their brief.

Mr. Justice Shiras, after making the above statement, delivered the opinion of the court.

The controversy in this case is between mortgagee creditors and judgment creditors of John R. Blocker. The mortgages were given to secure the payment of notes executed by Blocker to the amount of about $130,000, which were held by the Evans-Snider-Buel Company, and represented money that had been advanced by that company to Blocker to enable him to purchase the cattle embraced in the mortgage. The mortgages were

recorded, within a day or two after their execution, in the clerk's office of the United States Court for the Northern District of the Indian Territory, that being the district in which the mortgaged property was situated.

William McFaddin & Son had obtained a judgment against Blocker in Jefferson County, Texas, in May, 1887, and on June 17, 1896, they sued out an attachment on that judgment in the United States Court for the Northern District of the Indian Territory, and levied on the cattle described in the mortgages.

It is not denied that McFaddin & Son had actual knowledge of the existence of the mortgages at the time they sued out their writ of attachment. Indeed, it appears that the description of the cattle was taken by their attorneys from the record of the mortgages before the attachment was issued.

But it is claimed that, under the laws of the State of Arkansas, in force by act of Congress in the Indian Territory, as construed by the Supreme Court of Arkansas, the mortgages as recorded did not constitute a lien on the property described as against third parties, although they had actual notice of their existence, and that as McFaddin & Son had levied their attachment and obtained judgment against Blocker before the act of Congress of February 3, 1897, validating the mortgages and their record, was passed, such legislation was invalid and ineffectual to postpone the lien of the attachment and judgment to the lien of the mortgages.

Elaborate arguments, oral and written, have been advanced, *pro* and *contra*, on the propositions that an attaching creditor is not a purchaser for value; that an unrecorded deed or mortgage creating a lien will take precedence over a subsequent attachment; that notice to a subsequent purchaser of an unrecorded mortgage is conclusive evidence of *mala fides* on his part; that a chattel mortgage, not fraudulent as to creditors, made in good faith to secure an honest debt, is at common law superior to a subsequent attachment of the same property by a creditor of the mortgagor; that actual notice is equivalent in law to constructive notice. But as we are of opinion that the judgment of the Circuit Court of Appeals, sustaining the validity

of the act of February 3, 1897, as applicable to the present case, is sound, we do not consider it necessary to discuss the other propositions urged upon us by the counsel of the defendants in error.

The Fifth Amendment to the Federal Constitution, which declares that "no person shall be deprived of life, liberty or property without due process of law," is a limitation on the power of Congress, and the question is open whether the act in question, held applicable by the Circuit Court of Appeals to the present case, deprived the plaintiffs in error of property within the meaning of that Amendment.

We think it is impossible to successfully contend that the act of Congress, when it in terms declared that "all mortgages of personal property in the Indian Territory *heretofore* executed and recorded in the judicial district thereof in which the property was situated *at the time they were executed*, are *hereby* validated," can be construed as intended to apply only to mortgages made *after* the passage of the act, and had no retroactive effect. Such a construction was adopted by the Court of Appeals of the Indian Territory, and was approved by the dissenting judge in the Circuit Court of Appeals for the Eighth Circuit. But the language of the enactment is too express to permit such a view. The plain purpose of Congress was to give effect to mortgages of non-residents which had been *before* the passage of the act, recorded in the judicial district in which the property was situated at the time the mortgages were executed.

We think, therefore, that the trial court and the Circuit Court of Appeals were right in holding that the act of February 3, 1897, was applicable to the mortgages of the defendants in error, and we are to inquire whether the act, as so construed and applied, was a valid exercise of Congressional power.

The contention on behalf of the plaintiffs in error is that by the judgment in default against Blocker on January 29, 1897, they obtained a vested interest in the cattle seized under the writ of attachment, which could not be impaired by the subsequent legislative enactment of February 3, 1897.

But it is to be observed that the only issues determined by

that judgment were those between McFaddin & Son, the attaching creditors, and Blocker, the judgment debtor. Thereby any controversy as to the indebtedness and the existence of proper grounds of attachment were, as to those parties, concluded. But this judgment by default did not preclude the Evans-Snider-Buel Company from denying the right of the attaching creditors to a lien prior to that of the mortgages. That was an issue that was still pending and undetermined when the act of February 3, 1897, was approved. Accordingly, when the issue between the two classes of creditors came on to be tried in the United States Court for the Northern District of the Indian Territory the only question was as to the priority of the respective liens. It was not denied that the mortgages constituted valid liens as against Blocker, the mortgagor, nor was it denied that the mortgages had been recorded in the district in which the mortgaged property was situated, before the attachment was levied on the mortgaged property. That the money secured by the mortgages was advanced to Blocker and used by him in the purchase of the cattle, and that the attaching creditors had actual knowledge of the existence of the mortgages before they sued out the writ of attachment, were also admitted facts.

What was claimed was, that the record of the mortgages was ineffective as notice thereof to the attaching creditors, because the mortgagor was a non-resident of the Indian Territory when the mortgages were given, and that, under the registry law then in force, the mortgages of a non-resident, though in fact recorded, did not constitute liens as against third parties.

To this contention the mortgagees pleaded the curative act of February 3, 1897, whereby it was provided that mortgages of non-residents of the Indian Territory should be recorded in the judicial district in which the property was situated, and that all mortgages of personal property in the Indian Territory theretofore executed and recorded in the judicial district thereof in which the property was situated at the time they were executed were thereby validated.

As we have already stated, the trial court and the Circuit Court of Appeals of the Eighth Circuit held that the act of

February 3, 1897, was applicable to the case in hand, and, as a valid exercise of power, was decisive of the controversy.

The condition of the plaintiffs in error is very different from that of a purchaser for a valuable consideration without notice of an alleged prior incumbrance. It cannot be said that they parted with any money or other valuable consideration in reliance upon the disclosures of the registry record. The indebtedness of Blocker to them had accrued years before ; and if the record did not, under the decisions of the Arkansas Supreme Court, give them constructive notice of the existence of the mortgage debts, it is admitted to have given them the actual knowledge upon which they proceeded in suing out the writ of attachment. The judgment in their favor in the attachment suit, though conclusive as against Blocker, gave them no property rights in the cattle as against the mortgagees, and if their attempt to appropriate the mortgaged property is defeated, they are in no worse position than if the defendants in error had not advanced the money with which the cattle were purchased. If the problem were made to turn upon the equities between the two classes of creditors, the solution would be an easy one. With the legal title to the property in the common debtor, no court of equity would prefer the lien of a mere attachment to that of a prior mortgage given to secure the money advanced to purchase the property, if the attachment creditor had actual knowledge of the existence and nature of the mortgage.

And we agree with the Circuit Court of Appeals, that while it is not necessary to enter into the question of the comparative equities of the parties, yet, when the validity of the curative act is to be passed upon, that, in circumstances like those of the present case, the act cannot be justly impugned as depriving the attaching creditor of property within the meaning of the Constitution.

In *Freeborn* v. *Smith*, 2 Wall. 160, the facts were these : Smith had obtained a judgment against Freeborn in the Supreme Court of the Territory of Nevada. To this judgment a writ of error went from this court, under the law organizing the Territory, and the record of the case was filed in this court, December term, 1862. After the case was thus removed the Territory

was admitted by act of Congress, March, 1864, into the Union as a State. The act admitting the Territory contained, however, no provision for the disposal of cases then pending in this court on writ of error or appeal from the territorial courts. Motion was made, in behalf of the defendants in error, to dismiss the writ, on the ground that the territorial government having been extinguished by the formation of a state government in its stead, and the act of Congress which extinguished it having, in no way, saved the jurisdiction of the court as previously existing, nothing further could be done here. It was urged that the territorial judiciary had fallen with the government of which it was part; and that the jurisdiction of this court had ceased with the termination of the act conferring it. It being suggested, on the other side, that a bill was pending in Congress supplying the omissions of the act of March, 1864, the hearing of the motion for dismissal was suspended till it was seen what Congress would do. Congress finally acted, and on February 27, 1865, passed an act providing that all cases of appeal or writ of error theretofore prosecuted, and then pending in the Supreme Court of the United States from the Supreme Court of the Territory of Nevada, might be heard and determined by the Supreme Court of the United States, and providing for mandatory process, etc. The motion to dismiss the writ for want of jurisdiction was then renewed, on the ground that the amendatory act was a retrospective enactment interfering with vested rights, and as an attempt to confer on this court jurisdiction to review a judgment which, by law, at the time of its passage, was final and absolute. This court, through Mr. Justice Grier, thus disposed of the contention:

"It is objected to the act of February 27, just passed, that it is ineffectual for the purpose intended by it; that it is a retrospective act, interfering directly with vested rights; that the result of maintaining it would be to disturb and impair judgments which, at the time of its passage, were final and absolute; that the powers of Congress are strictly legislative, and this is an exercise of judicial power, which Congress is not competent to exercise.

"But we are of opinion that these objections are not well

founded. . . . What obstacle was in the way of legislation to supply the omission to make provision for such cases in the original act? If it comes within the category of retrospective legislation, as has been argued, we find nothing in the Constitution limiting the power of Congress to amend or correct omissions in previous acts. It is well settled that where there is no direct constitutional prohibition, a State may pass retrospective laws, such as, in their operation, may affect suits pending, and give to a party a remedy which he did not previously possess, or modify an existing remedy, or remove an impediment in the way of legal proceedings. . . . Such acts are of a remedial nature, and are the peculiar subject of legislation. They are not liable to the imputation of being assumptions of judicial power."

The power of a legislature to pass laws giving validity to past deeds which were before ineffectual is well settled. Thus in *Watson* v. *Mercer*, 8 Pet. 100, the title to land in controversy was originally in Margaret Mercer, the wife of James Mercer. For the purpose of transferring the title to the husband, they conveyed to a third person, who immediately conveyed to James Mercer. The deed of Mercer and wife bore date of May 30, 1785. It was fatally defective as to the wife, in not having been acknowledged by her in conformity with the provisions of the statute of Pennsylvania of 1770, touching the conveyance of real estate by *femmes covert.* She died without issue. James Mercer died leaving children by a former marriage. After the death of both parties, her heirs sued his heirs in ejectment for the premises, and recovered. The Supreme Court of the State affirmed the judgment. In 1826 the legislature passed an act which cured the defective acknowledgment of Margaret Mercer, and gave the same validity to the deed as if it had been well executed originally on her part. The heirs of James Mercer thereupon sued her heirs and recovered back the same premises. This judgment was also affirmed by the Supreme Court of the State, and that judgment of affirmance was affirmed by this court.

*Watson* v. *Mercer* was cited and followed by this court in *Randall* v. *Kreiger*, 23 Wall. 137, where it was held that it was

competent for the legislature to validate a defective power of attorney to convey land.

Similar principles were recognized in *Terry* v. *Anderson*, 95 U. S. 628; *Freeland* v. *Williams*, 131 U. S. 405; *Baker's Executors* v. *Kilgore*, 145 U. S. 487; *Louisiana* v. *New Orleans*, 109 U. S. 285. The case of *Green* v. *Abraham*, 43 Ark. 420, was cited in the opinion of the Circuit Court of Appeals. There a mortgage improperly acknowledged had been placed of record, which by reason of the defective acknowledgment was not notice to subsequent purchasers or lienors. Afterwards the mortgaged property was attached under a writ against the mortgagor, and thereafter the legislature validated the record of the mortgage. The mortgagee having proceeded in replevin to recover the attached property from one who claimed it under the attachment, it was held by the Supreme Court of Arkansas that the interest of the attaching creditor in the attached property was not vested, but could be, and that it was in fact displaced by the subsequent enactment validating the record of the mortgage.

Without pursuing the subject further, our conclusion is that no property rights of the plaintiffs in error were impaired by the act of February 3, 1897. Their judgment against Blocker remained unaffected, and the lien of the writ of attachment was not destroyed, but continued to hold any surplus that might have remained after the satisfaction of the mortgage liens. They have no just ground in constitutional law to complain of the action of Congress in giving legal effect to the equitable lien of the mortgages.

Approving the careful opinion of the Circuit Court of Appeals for the Eighth Circuit, reported in vol. 105 Fed. Rep. 293, the judgment of that court is

*Affirmed.*

MR. JUSTICE GRAY and MR. JUSTICE WHITE took no part in the decision.