696

No. 986.

District Court, E. D. Oklahoma.

Oct. 27, 1945.

H. A. Ledbetter, of Ardmore, Okl., for plaintiffs.

Stephen A. George, of Ardmore, Okl., for defendant C. B. Goddard.

R. A. Howard, of Ardmore, Okl., for defendants Erlewine et al.

Marvin Shilling, Asst. U. S. Atty., of Muskogee, Okl., for the United States.

RICE, District Judge.

As this case progresses along its course, it becomes more difficult. The first judgment entered herein on January 19, 1944, after the opinion of the Circuit Court in United States v. D. B. Hellard, 10 Cir., 138 F.2d 985, was in favor of the defendants. After the decision of the Supreme Court in United States v. D. B. Hellard, 322 U.S. 363, 64 S.Ct. 985, 88 L.Ed. 1326, the Government filed in the Circuit Court a motion to reverse the judgment herein and remand to this Court for further proceedings not inconsistent with the opinion of the Supreme Court in the Hellard Case; which motion was granted by the Circuit Court. The mandate of the Circuit Court contains the following language: "It is now here ordered by the Court that said motion be and the same is hereby granted, and that said judgment of the United States District Court for the Eastern District of Oklahoma, in the above entitled cause be and the same is hereby reversed and the cause be and the same is hereby remanded to the United States District Court for the Eastern District of Oklahoma *for further proceedings not inconsistent with the opinion of the Supreme Court of the United States in its Case No. 648, October Term, 1943, United States of America, vs. D. B. Hellard* (emphasis supplied) without prejudice to the right of appellees to have the trial court rule upon their contention that the presence of the Probate Attorney in the partition proceedings operated to bind the United States."

On May 8, 1945, after a hearing and after ruling adversely upon defendants' contention (made in the first trial but not ruled upon by the court) "that the pres-

ence of the Probate Attorney in the partition proceedings operated to bind the United States", judgment was entered herein in favor of plaintiffs and intervenor, United States of America. In doing so, the Court was endeavoring to proceed as directed, to-wit: "not inconsistent with the opinion of the Supreme Court" in the Hellard Case.

While motion for new trial was pending and on July 2, 1945, Congress passed and the President approved Public Law No. 116, 59 Stat. 313, 25 U.S.C.A. § 355 note, Section 3 of which is as follows: "That no order, judgment, or decree in partition made, entered, or rendered subsequent to the effective date of the Act of June 14, 1918 (40 Stat. 606), and prior to the effective date of this Act, and involving inherited restricted lands of enrolled and unenrolled members of the Five Civilized Tribes, shall be held null, void, invalid, or inoperative, nor shall any conveyance of any land pursuant to such order, judgment, or decree be held null, void, invalid, or inoperative because the United States was not a party to such order, judgment, or decree, or to any of the proceedings in connection therewith, or because the United States, its agents, or officers, or any of them, was not served with any notice or process in connection therewith, and all such orders, judgments, decrees, and conveyances, which are subject to attack solely by reason of any of the infirmities enumerated by this section, are hereby confirmed, approved, and declared valid." And the defendants now urge as an additional grounds for a new trial, said Act of Congress. The other matters urged for new trial are, in my judgment, not well taken, but the effect of this new law presents a wholly new and difficult problem.

The plaintiffs allege that Public Law No. 116 is not constitutional being contrary to the due process clause of the Fifth Amendment. In the event it is held to be constitutional, the mandate of the Circuit Court of Appeals presents a second problem for this Court.

■ First, is the Act of Congress valid or constitutional? A trial court is reluctant to say that any law enacted by Congress and approved by the President is unconstitutional. Such an act carries with it a presumption of constitutionality, and a heavy burden is upon him who asserts unconstitutionality to show that it is a viola-

tion of the Constitution. Bradley v. Richmond, 227 U.S. 477, 33 S.Ct. 318, 57 L.Ed. 603; Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764; Smeltzer v. St. Louis & S. F. R. Co., C.C.Ark., 158 F. 649.

■ Public Law No. 116 is in the nature of curative legislation. It is entitled "An Act to validate titles to certain lands conveyed by Indians of the Five Civilized Tribes * * * and to validate State court judgments in Oklahoma and judgments of the United States District Courts of the State of Oklahoma." Section 3 thereof was designed and intended to cure the defect occasioned by the failure to make the United States a party to a partition proceeding begun by full blood Indian heirs in the courts of Oklahoma. It was this failure that caused a reversal by the Supreme Court in United States of America v. Hellard. Such legislation is not unusual, and is generally sustained. W. P. McFaddin and McFaddin Executors v. Evans-Snider-Buel Co. et. al., 185 U.S. 505, 22 S.Ct. 758, 46 L.Ed. 1012; Rafferty v. Smith, Bell & Co., Ltd., 257 U.S. 226, 42 S.Ct. 71, 66 L.Ed. 208; United States v. Heinszen, 206 U.S. 370, 27 S.Ct. 742, 51 L.Ed. 1098, 11 Ann.Cas. 688; Chicago, R. I. & P. R. Co. v. Austin, 63 Okl. 169, 163 P. 517, L.R.A.1917D, 666; Scott v. Morris Nat. Bank, 109 Okl. 276, 235 P. 912; certiorari denied, 269 U.S. 646, 46 S.Ct. 487, 70 L.Ed. 1130; McIntosh v. Dill, 86 Okl. 1, 205 P. 917. The above authorities sustain the proposition that curative acts apply to pending proceedings and may be retroactive.

"Curative acts apply to pending proceedings. It is truly said that the bringing of a suit vests in a party no right to a particular decision, and his case must be determined on the law as it stands, not when the suit was brought, but when the judgment is rendered. It is no objection to a curative act that it validates what has previously been declared invalid in a judicial proceeding. The judgment may furnish the occasion for the act. Of course, the Legislature cannot annul or set aside the judgment of a court, but it can remove a defect on which the judgment proceeded."

2 Lewis' Sutherland, Stat.Const. 1237; Chicago, R. I. & P. R. Co. v. Austin, supra. See also Smallwood v. Gallardo, 275 U.S. 56, 48 S.Ct. 23, 72 L.Ed. 152; Home Sav-

ings & Loan Ass'n v. Plass, 9 Cir., 57 F. 2d 117; Brown v. Truscott, Tex.Com.App., 34 S.W.2d 837.

■ Congress by legislation may cure any defect in proceedings occasioned by a failure to take some step, which it might have dispensed with by prior statute. See Cooley on Constitutional Limitations, 3d Ed., 371. Mr. Justice Hardy in Chicago, R. I. & P. R. Co. v. Austin [63 Okl. 169, 163 P. 519], expressed the same thought as follows: "In consideration of legislation of this character the important question to be considered in determining its validity and effect is to ascertain whether the acts which it attempted to validate would be effectual for the purposes intended if a valid law enacted prior to the doing thereof had directed that they be done as they were done. In such cases the authority of the Legislature to validate them thereafter is well established, and rights predicated, upon such curable defects are not deemed meritorious nor entitled to the protection ordinarily accorded to vested rights. 2 Lewis' Sutherland, Stat.Const. 1232."

■ It is not objectionable that the change was made effective retroactively. McFaddin v. Evans-Snider-Buel Co. 185 U.S. 505, 22 S.Ct. 758, 46 L.Ed. 152. Only ex post facto laws are barred by the Constitution and this does not include civil actions. Bankers Trust Co. v. Blodgett, 260 U.S. 647, 43 S.Ct. 233, 67 L.Ed. 439; Locke v. New Orleans, 4 Wall. 172, 18 L. Ed. 334.

■ It must also be remembered that in passing Public Law No. 116, Congress was operating in a field wherein it has plenary power. It is a field in which Congress is supreme. Brader v. James, 246 U.S. 88, 38 S.Ct. 285, 62 L.Ed. 591; Tiger v. Western Investment Co., 221 U.S. 286, 31 S.Ct. 578, 55 L.Ed. 738; Winton v. Amos, 255 U.S. 373, 41 S.Ct. 342, 65 L.Ed. 684; United States v. Sandoval, 231 U.S. 28, 34 S.Ct. 1, 58 L.Ed. 107; Stephens v. Cherokee Nation, 174 U.S. 445, 19 S.Ct. 722, 43 L.Ed. 1041; Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299. United States v. Hellard, supra. It may not be doubted that Congress had the power in the first place to dispense with the necessity of the Government being a party to the partition proceedings authorized by Act of June 14, 1918, 25 U.S. C.A. § 355, 40 Stat. 606. Indeed, it was the consensus of opinion of the courts and lawyers of Oklahoma, prior to the Hellard opinion, that Congress had done just that. And Congress has the same power to alter, relax, and entirely remove restrictions which it had to impose them, and it can accomplish by ratification what it could have authorized in the first place. United States v. Heinszen, supra.

Since Section 3 of the Act in question was designed to cure certain defects discussed in United States v. Hellard, it is appropriate to examine that opinion and see just what the Supreme Court said. It confirmed *the jurisdiction* of the Oklahoma State courts to partition lands inherited by full blood Indians, Act of June 14, 1918, 25 U.S.C.A. § 355, 40 Stat. 606, and the authority of Congress to select state tribunals to perform such functions. The partition proceedings involved therein were begun and completed in a state court without service of the notice upon the Superintendent for the Five Civilized Tribes as provided in Section 3 of Act of April 12, 1926, 44 Stat. 239, 240. And concerning that, the Supreme Court says [322 U.S. 363, 64 S.Ct. 986]: "By that Act the United States is given an opportunity to appear in the cause and is bound by the judgment which is entered." The Court then concluded that the United States was not bound, and that it is a necessary party to such proceedings for the reason that there is a governmental interest to be protected. It is not such an interest as may be expressed in terms of property. It need not be. The interest of the Government in such a proceeding is defined in the opinion as follows: "The United States as guardian of the Indians is necessarily interested either in obtaining partition in kind where that course conforms to its policy of preserving restricted land for the Indians or in seeing that the best possible price is obtained where a sale is desirable. Where, as here, the lands are both tax-exempt and restricted, the United States is concerned with the reinvestment of the proceeds in other lands likewise tax-exempt and restricted as provided in the Act of June 30, 1932, 47 Stat. 474, 25 U. S.C. § 409a, 25 U.S.C.A. § 409a. The United States is also interested in protecting the preferential right of the Secretary of the Interior to purchase the land at the sale for another Indian, as provided in § 2 of the Act of June 26, 1936, 49 Stat. 1967, 25 U.S.C.A. § 502. These are important governmental interests. *Since the power*

*of Congress over Indian affairs is plenary, it may waive or withdraw these duties of guardianship or entrust them to such agency—state or federal—as it chooses.*" (Emphasis supplied.)

In the Hellard Case, which was begun by one who had acquired title through partition proceedings, the Indian defendants, former owners of the land, filed disclaimers, but it was held that the Government in its own capacity might continue the suit. In that regard, the Court said: "*Though the Indian's interest is alienated by judicial decree, the United States may sue* (emphasis supplied) *to cancel the judgment and set the conveyance aside where it was not a party to the action.*" The Hellard case is unlike Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235, in that the Minnesota court had *no jurisdiction* to condemn the lands involved therein.

The Hellard Case is also unlike Grisso v. United States, 10 Cir., 138 F.2d 996, 1000, in that the interest of the Government discussed in the Hellard Case is not such an interest as was involved and discussed in the Grisso case. The principle announced in the latter case is as follows: "Part owners or cotenants in real estate are indispensable parties in an action for partition as there can be no proper, complete, or conclusive division or accounting without their actual or constructive presence." In the Grisso Case, two part owners—cotenants—were not named in the partition proceedings and their interest in the land was purportedly conveyed thereby. The omitted cotenants brought suit to cancel the Sheriff's deed and to recover their interest in the land. But in this case now under consideration, all the heirs, part owners and cotenants, were parties to the partition proceedings by which the land was conveyed and each received his pro rata share of the purchase price. And not until after the decision in the Hellard Case did these heirs take the position that they might recover this land upon the theory that the partition proceedings could be set aside for the reason that they had not made the United States a party to such proceedings. And now, in view of Public Law No. 116, the Government no longer makes that contention.

The Indian heirs are here now insisting that it is their constitutional right to have the sale of the land (brought about by their own acts) held void solely because in effecting the sale they did not serve the notice upon the Superintendent for the Five Civilized Tribes pursuant to the provisions of Section 3 of the Act of April 12, 1926, supra. And they insist that Congress may not take away from them the right to recover the land. Congress might have provided for just such a sale without the necessity of making the United States a party. It may now waive the presence of the United States in such cases or ratify and confirm what was done in the absence of the United States.

The purpose of Section 3 of Public Law No. 116 is not to deprive the Indians of any substantial rights, but to bar them from asserting as a basis for an action to set aside former partition proceedings the fact that the United States was not a party to the partition. The failure properly to bind the United States in the partition was a procedural matter. The procedure to be followed had been established by Congress, and it remained within the power of Congress to change it. Congress has spoken. It spoke for the United States in a matter concerning which it has plenary power. In effect, Congress said that although the United States has a right to question these proceedings and set them aside by reason of its governmental interest, under the circumstances, it elects not to avail itself of that legal right. It says in effect that having selected the State court as an agency to conduct partition proceedings even though the principal requirements for binding the United States were not had, the action of the State court is ratified and affirmed, and as to all such actions had prior to the Hellard decision, the United States elects to be bound and waives its right to "sue to cancel the judgment and set the conveyance aside." Who is there to say that Congress does not rightly and with authority speak for the United States on the matter? Certainly, the Indians who instituted the proceedings and neglected to make the United States a party to the suit ought not now be permitted to do so. The Constitution does not guarantee to an Indian the right to have his land remain restricted. Williams v. Johnson, 239 U.S. 414, 36 S.Ct. 150, 60 L.Ed. 358; Tiger v. Western Investment Co., 221 U.S. 286, 31 S.Ct. 578, 55 L.Ed. 738. My conclusion is that Public Law No. 116 is constitutional.

The right of an Indian to recover his restricted land for the reason that in mak-

ing the sale restrictions were not removed, springs from Congressional legislation, not from the Constitution.

There would seem to be no valid distinction in the retroactive effect of the approval of these State court judgments by Congress and the retroactive effect of the approval of the President of an Indian's deed involved in Pickering v. Lomax, 145 U.S. 310, 12 S.Ct. 860, 862, 36 L.Ed. 716; which approval was made thirteen years after the execution of the deed therein. The Court said: "Nor do we consider it material that the grantee had in the mean time died, since, if the ratification be retroactive, it is as if it were endorsed upon the deed when given, and enures to the benefit of the grantee of Horton, the original grantee, not as a new title acquired by a warrantor subsequent to his deed enures to the benefit of the grantee, but as a deed, imperfect when executed, may be made perfect as of the date when it was delivered." To the same effect is Lykins v. McGrath, 184 U.S. 169, 22 S.Ct. 450, 451, 46 L.Ed. 485, in which the deed involved required the approval of the Secretary of the Interior to give it validity. The Indian grantor executed the deed and did not have it approved by the Secretary of the Interior. After his death, the Secretary of the Interior approved the deed. The grantor heirs claimed the approval was a nullity; that title vested in them upon the death of grantor. The Court held "the consent of the Secretary of the Interior to a conveyance by one holding under a patent like the present may be given after the execution of the deed, and when given is retroactive in its effect and relates back to the date of the conveyance. * * * When the Secretary approved the conveyance it was a determination that the purposes for which the restriction was imposed had been fully satisfied."

■ In effect, the defendants are asking this Court to grant a new trial, vacate the last judgment entered herein and render the same judgment that was originally rendered herein, and which was reversed by the Circuit Court of Appeals. They do this in face of the specific directive contained in the mandate that this Court proceed in conformity with the law expressed in the Hellard opinion. In my judgment, the law as expressed in the Hellard opinion and the mandate of the Circuit Court of Appeals is for this Court "the law of

the case". As I interpret the mandate of the Circuit Court of Appeals, this Court was directed to enter a judgment in favor of the plaintiffs and intervenor, unless upon the trial of the reserved issue the Court concluded that the Government was a party to the partition proceedings in the District Court of Carter County, Okl., and in that event, and in that event only, the Hellard opinion would not be applicable or controlling. Having concluded that the Government was not a party to the partition proceedings by reason of the appearance therein of the United States Probate Attorney, this Court has no discretion but to follow the mandate of the Circuit Court and proceed according to the opinion of the Supreme Court in United States of America v. D. B. Hellard. Failing to do so, in my opinion, would subject this Court to mandamus to compel it to do so. Bastian v. Erickson, 10 Cir., 114 F.2d 338. As to all matters except that reserved in the mandate of the Circuit Court, the mandate and the opinion of the Supreme Court in the Hellard Case became the law of this case, and it was, and is, the duty of the trial court to comply. In re Sanford Fork & Tool Co., 160 U.S. 247, 16 S.Ct. 291, 40 L.Ed. 414; Stewart v. Salamon, 97 U.S. 361, 24 L.Ed. 1044; Thompson v. Maxwell Land Grant Co., 168 U.S. 451, 18 S.Ct. 121, 42 L.Ed. 539; United States v. New York Indians, 173 U.S. 464, 19 S.Ct. 487, 43 L.Ed. 769; Smyth v. Klauder, 3 Cir., 52 F.2d 109; Turner v. Kirkwood, 10 Cir., 62 F.2d 256; Moody v. Johnston, 9 Cir., 70 F.2d 835; City of Orlando v. Murphy, 5 Cir., 94 F.2d 426; Seagraves v. Wallace, et al., 5 Cir., 69 F.2d 163; Peavy-Byrnes Lumber Co. v. Commissioner of Internal Revenue, 5 Cir., 86 F.2d 234; Duke Power Co. v. Greenwood County, 4 Cir., 91 F.2d 665; In re N. V. Zuid —Hollandsche Scheepvaart Mattschoppij of Rotterdam, 5 Cir., 64 F.2d 915; Pike Rapids Power Co. v. Minneapolis, St. P. & S. S. M. R. Co., 8 Cir., 106 F.2d 891.

It would seem that while "the law of the case" is binding upon the trial court, it may not be binding upon the Circuit Court of Appeals. See Luminous Unit Co. v. Freeman-Sweet Co., 7 Cir. 3 F.2d 577.

Solely for the reason that I consider that I am bound by the mandate of the Circuit Court to render a judgment in conformity with the views expressed in the Hellard opinion, I deny the motion for new trial.