726 F.2d 1420
 10 Collier Bankr.Cas.2d 126, Bankr. L. Rep. P 69,760
In the Matter of Eugene L. REYNOLDS, Elaine M. Reynolds,
Alan Eugene Lindner, Michael A. Miltimore, Rosalie
A. Miltimore, Robert S. Winterfeld, Debtors.
STATE OF IDAHO, DEPARTMENT OF HEALTH & WELFARE, Plaintiff-Appellant,
v.
Eugene L. REYNOLDS, Alan Eugene Lindner, Michael A.
Miltimore, Robert S. Winterfeld, Defendants-Appellees,
In the Matter of James E. HAZEN, Sherry Hazen, Debtors.
STATE OF IDAHO, DEPARTMENT OF HEALTH & WELFARE, Plaintiff-Appellant,
v.
James E. HAZEN, Defendant-Appellee.
 Nos. 83-3571, 83-3572.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 13, 1983.
Decided Feb. 28, 1984.
 
 Christopher D. Bray, Bray & Bernter, Boise, Idaho, for plaintiff-appellant.
 William Breck Seiniger, Jr., Boise, Idaho, for defendants-appellees.
 Appeal from the United States District Court for the District of Idaho.
 Before WALLACE, ALARCON and BOOCHEVER, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 We must decide whether an amendment to 11 U.S.C. Sec. 523(a)(5)(A), effective August 13, 1981, applies to pending bankruptcy cases in which the debtor filed a petition before that date. The district court, 26 B.R. 181, held that the amendment should not be given retroactive effect and applied the law in effect as of the date of the filing of the bankruptcy petition. We reverse.
 
 I.
 
 2
 The district court consolidated the cases of five individual debtors: Hazen, Reynolds, Miltimore, Winterfeld, and Lindner. There are common factual elements.
 
 
 3
 All five individuals were divorced from their spouses pursuant to Idaho court judgments, which awarded custody of their minor children to the wives and specific amounts of child support per month. The women applied for and received monthly public assistance payments from the State of Idaho, Department of Health and Welfare, for the benefit of their minor children. The women assigned their rights to receive child support payments to the state.
 
 
 4
 Some of the debtors filed bankruptcy petitions, seeking in part to discharge their child support obligations. In other cases, the State of Idaho filed suit pursuant to state law to collect delinquent child support payments and received a judgment awarding the state the unpaid child support, attorneys' fees, costs and statutory interest. The debtors then filed their bankruptcy petitions.
 
 
 5
 After the filing of these bankruptcy petitions, Congress amended 11 U.S.C. Sec. 523(a)(5)(A) to disallow the discharge of a child support obligation assigned to an entity under section 402(a)(26) of the Social Security Act, which requires an applicant for assistance under the Aid to Families with Dependent Children program (AFDC) to assign child support obligations to the state administering the program. The amendment was made effective August 13, 1981. After this date, the bankruptcy court granted each of the debtors a discharge. The State of Idaho filed objections to the discharge of the child support obligations.
 
 
 6
 The bankruptcy court held in Matter of Hazen, 19 B.R. 545 (Bkrtcy.D.Idaho 1982), that dischargeability of the child support obligations assigned to the state should be determined by the law in effect at the time of the filing of the debtor's petition in bankruptcy. Therefore, the debts were dischargeable. The cases of Hazen and Reynolds were decided together; those of Miltimore, Winterfeld, and Lindner were decided on the basis of Hazen. The district court affirmed the decisions of the bankruptcy judge.
 
 II.
 
 7
 Whether the dischargeability of child support obligations should be determined by the law in effect on the date of the filing of the petition in bankruptcy or on the date of the ruling by the judge on the issue is a question of law subject to de novo review by this court. The facts have been stipulated by the parties. See Matter of B & W Enterprises, Inc., 713 F.2d 534, 536 (9th Cir.1983) (stipulated facts, remaining questions of law subject to de novo review).
 
 
 8
 In 1974 Congress enacted legislation that prohibited the discharge of child support obligations assigned to a state as a prerequisite for the receipt of assistance payments. Social Services Amendments of 1974, Pub.L. No. 93-647, 88 Stat. 2337, 2356 (1975) (codified at 42 U.S.C. Sec. 656(b)). This provision was repealed by the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2549, 2679. The Bankruptcy Reform Act of 1978 also provided that child support obligations owed directly to the spouse, former spouse, or child of the debtor were nondischargeable. 92 Stat. at 2590-91 (codified at 11 U.S.C. Sec. 523(a)(5)(A)). This was the state of the law at the time the five debtors now before us filed their petitions in bankruptcy.
 
 
 9
 None of the debtors was granted a discharge before Congress reinstituted 42 U.S.C. Sec. 656(b) and amended 11 U.S.C. Sec. 523(a)(5)(A) to again prohibit the discharge of child support obligations assigned to a state as a condition of entitlement to assistance. Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97-35, 95 Stat. 357, 863. Congress made these provisions effective on enactment (August 13, 1981) rather than on October 1, 1981, the general date of effectiveness of the Act. 95 Stat. at 863-64. Thus, at the time the judge determined the dischargeability of these child support obligations, the law provided that these debts were not dischargeable.
 
 A.
 
 10
 The retroactive application of a federal statute (other than an ex post facto law or a bill of attainder) is not forbidden under the Constitution so long as due process requirements are met.[1] 2 C.D. Sands, Statutes and Statutory Construction Sec. 41.03 (4th ed. 1973). Indeed, as a general rule, a judge should apply the law in effect on the date of decision. In United States v. The Schooner Peggy, 5 U.S. 103, 1 Cranch 103, 2 L.Ed. 49 (1801), the Supreme Court first set forth the principle in the following language:
 
 
 11
 It is, in the general, true, that the province of an appellate court is only to inquire whether a judgment, when rendered, was erroneous or not. But if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied.
 
 
 12
 5 U.S. at 110, 1 Cranch at 110. In clarifying this rule, in Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 281-82, 89 S.Ct. 518, 525-26, 21 L.Ed.2d 474 (1969), the Supreme Court ruled that "an appellate court must apply the law in effect at the time it renders its decision," noting that the Schooner Peggy reasoning had been applied whether the change was constitutional, statutory, or judicial. This principle had been applied to a bankruptcy statute in Carpenter v. Wabash Railway Co., 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940) (amendment to bankruptcy statute enacted while case pending for review held applicable).[2] We, therefore, must follow the Schooner Peggy and apply the law now in effect to the cases before us, unless an exception to the limited retroaction rule is applicable. Legislation is not applied to pending cases where Congress has expressly directed that the law is prospective only or where manifest injustice would result from a retrospective application.
 
 B.
 
 13
 In Bradley v. School Board of the City of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court held that "a court is to apply the law in effect at the time it renders its decision, unless ... there is statutory direction or legislative history to the contrary." Id. at 711, 94 S.Ct. at 2016. The Supreme Court also noted in Bradley that "even where the intervening law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect." Id. at 715, 94 S.Ct. at 2018.
 
 
 14
 The Omnibus Budget Reconciliation Act of 1981 is silent concerning the application of the statute to pending bankruptcy proceedings. The legislative history is equally barren of any reference to this issue.
 
 
 15
 The House Conference Report No. 97-208, 97th Cong., 1st Sess., 986, relating to the Omnibus Budget Reconciliation Act of 1981, simply provides:
 
 
 16
 Both the House bill and the Senate amendment included the following identical provision which was agreed to by the conferees:
 
 
 17
 A provision of the Social Security Act, previously in effect, would be reinstated, declaring that a child support obligation assigned to a State as a condition of AFDC eligibility is not discharged in bankruptcy. The provision would be effective upon enactment.
 
 
 18
 Printed in 1981 U.S.Code Cong. & Ad.News 396, 1348.
 
 
 19
 While not dispositive on the issue before us, the fact that Congress expressed its intention that the statute take effect upon enactment is some indication that it believed that application of its provisions was urgent. We certainly cannot construe this expression of congressional concern as a direction that the law should not be applied to pending matters.
 
 
 20
 Furthermore, sound public policy and the history of this legislation would support the application of the child support provisions to pending matters.
 
 
 21
 The obligation of parents to support their children is a matter of paramount social concern. Throughout the history of this child support legislation, parents never were allowed a discharge of a child support obligation owed directly to the other parent or child. For a brief period, however, a parent was allowed to receive a discharge in bankruptcy if the right to receive the support payments had been assigned to the state. As noted above, such an assignment is required by Congress as a condition for a state's participation in the AFDC program. The AFDC program was developed in part to encourage enforcement of the obligation of parents to support their children. S.Rep. No. 93-1356, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 8133, 8134, 8145-58. To require a child support obligation to be assigned to a state in order to enforce that obligation and at the same time to allow a discharge of that obligation because of that very assignment defeats the goal of enforcement of parental duties. This incongruity, plus the fact that Congress made the latest child support amendment effective at an earlier date than the rest of the act (95 Stat. at 863-64), suggests strongly that Congress must have intended that this legislation should be applied to pending cases.
 
 C.
 
 22
 A second exception to the general rule of Schooner Peggy arises where application of a change in the law to pending cases would result in manifest injustice. Thorpe, 393 U.S. at 282, 89 S.Ct. at 526. Concerns relative to injustice "center upon (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." Bradley, 416 U.S. at 717, 94 S.Ct. at 2019.
 
 
 23
 Here, we have on the one hand five fathers who have an obligation to support their children by reason of court decrees ordering a specified amount of support, a common law tradition obligating parents to provide their children with necessities, and a continuing, strong public policy favoring support. On the other hand, we have the State of Idaho, Department of Health and Welfare, a governmental entity charged with the distribution of public funds to the benefit of children who are not receiving support and the responsibility to locate errant parents and to enforce support obligations. It was suggested in the Schooner Peggy that a court should not retrospectively affect the rights of private individuals. 5 U.S. at 69. This litigation does not involve "mere private cases between individuals." Id. See also Bradley, 416 U.S. at 719, 94 S.Ct. at 2020 (school desegregation litigation is a great national concern).
 
 
 24
 Manifest injustice may also arise from the nature of the rights of the parties. A court would not deprive a party of a right that had matured or become unconditional. Bradley, 416 U.S. at 720, 94 S.Ct. at 2020. Furthermore, in matters involving property rights, retroactive application of a new statute might result in an unconstitutional taking of property without due process of law.
 
 
 25
 In Union Pacific Railroad Co. v. Laramie Stock Yards Co., 231 U.S. 190, 34 S.Ct. 101, 58 L.Ed. 179 (1913), the Court stated that "the first rule of construction is that legislation must be considered as addressed to the future, not to the past." 231 U.S. at 199, 34 S.Ct. at 102. The Union Pacific case involved adverse possession of the railroad's right of way. A retroactive application of the statute, allowing the adverse possession, would have deprived the railroad of its vested property rights; therefore, the Court held that the statute should apply only prospectively. 231 U.S. at 202, 34 S.Ct. at 103.
 
 
 26
 In United States v. Security Industrial Bank, --- U.S. ----, 103 S.Ct. 407, 411, 74 L.Ed.2d 235 (1982), the Supreme Court found that perfected liens on household furnishings and appliances did involve a property interest of the creditors. A bankruptcy amendment enacted after the liens were perfected allowed debtors to avoid liens on such property. As application of the amendment to perfected liens raised a serious constitutional issue under the fifth amendment, the Court looked to the rules of statutory construction to avoid the constitutional issue. 103 S.Ct. at 412. Relying on Union Pacific, the Court held that a statute affecting property rights was meant to be applied only prospectively in the absence of a clear congressional intent that it apply before the enactment date. This construction allowed the Court to avoid the constitutional issue. 103 S.Ct. at 414. In applying this rule of construction, the Court distinguished legislation affecting vested property rights from other laws affecting claims. "This principle has been repeatedly applied to bankruptcy statutes affecting property rights." 103 S.Ct. at 413 (citing Holt v. Henley, 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767 (1914) (rights to an automatic sprinkler system); Auffm'ordt v. Rasin, 102 U.S. 620, 26 L.Ed. 262 (1881) (rights to certain securities)). The Court noted that in other cases, not involving property rights, new statutes were applied to pending proceedings: Claridge Apartments Co. v. Commissioner, 323 U.S. 141, 65 S.Ct. 172, 89 L.Ed. 139 (1944) (rights to tax benefits); Dickinson Industrial Site, Inc. v. Cowan, 309 U.S. 382, 60 S.Ct. 595, 84 L.Ed. 819 (1940) (procedural rules); Carpenter v. Wabash Railway, 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940) (priority of payment of claims); McFaddin v. Evans-Snider-Buel Co., 185 U.S. 505, 22 S.Ct. 758, 46 L.Ed. 1012 (1902) (curative statute); Legal Tender Cases, 79 U.S. 457, 12 Wall. 457, 20 L.Ed. 287 (1870) (payment of debts in legal tender). 103 S.Ct. at 413-414 n. 10.
 
 
 27
 Under the law in effect at the time of the filing of these bankruptcy petitions, the fathers' assigned child support obligations were dischargeable. The parental duty to pay child support cannot be characterized as a matured or unconditional property right. Until a final decision on dischargeability is made, debtors still are obligated to pay their debts and would be required to do so if the petition were withdrawn. Application of the amendment, disallowing the discharge of these child support obligations, would not deprive the debtors of a matured property right.
 
 
 28
 The third concern of manifest injustice relates to the nature of the impact of the change in the law upon the rights of the parties. Bradley defines this concern as the "possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." 416 U.S. at 720, 94 S.Ct. at 2021. The 1981 amendment that became effective before any decision was made on the petitions of these debtors did not impose a new obligation on the debtor. Instead, under the amendment parents cannot escape responsibility for an existing obligation. One purpose of the Bankruptcy Reform Act of 1978 was to give debtors a fresh start. That purpose was tempered by other public policies, including enforcement of the parental obligation of support. Thus, the 1978 Act excepted support obligations owed directly to the child or other spouse from discharge. The 1981 amendment reinforces that obligation and allows the states to carry out their mandate under the AFDC program.
 
 
 29
 Upon consideration of the parties, the nature of their rights, and the impact of the amendment to 11 U.S.C. Sec. 523(a)(5)(A) upon those rights, we cannot say that application of the amendment to actions pending at the time of the amendment would cause such "manifest injustice" as to compel an exception to the rule that a court applies the law in effect on the date of decision. It is not manifestly unjust to expect parents to meet their responsibilities.
 
 
 30
 The judgment of the district court is reversed. The debtors' child support obligations were not dischargeable under Sec. 523(a)(5)(A) as amended. The cause is remanded for hearings on the issue of attorney's fees and costs.
 
 WALLACE, Circuit Judge, concurring:
 
 31
 I concur in the result. I write separately to express my view that the majority's discussion of retroactivity is unnecessary and confuses the issue. When the debtors filed their claims, they thought they were entitled to discharge their child support obligations in bankruptcy. This was because their spouses had assigned to Idaho their right to collect those support payments from their husbands. By the time the bankruptcy court rendered its decision, the law had been changed to make those payments non-dischargeable. I believe this case should not be analyzed as one involving the issue of retroactivity, but rather by application of the rule that the courts are governed by the law in effect at the time a decision is rendered, unless it would violate congressional intent or would be manifestly unjust. As the exceptions have not been proven, I would affirm.
 
 
 32
 The amendment was part of the Omnibus Budget Reconciliation Act of 1981. The Act was largely a fiscal measure designed to reduce federal spending and restore balance to our dual system of government. See 1981 U.S.Cong. & Ad.News, 97th Cong., 1st Sess., p. 396 et seq. States had complained of the economic burdens imposed on them by allowing this type of discharge. See, e.g., In re Glidden, 653 F.2d 85, 87 (2d Cir.1981) (Connecticut's challenge alleged "a possible loss of as much as $1.25 million in annual payments to the State, as well as a loss of $47.1 million in accumulated past child support arrearages.").
 
 
 33
 This case does not involve the abrogation by legislation of established property interests. The debtors had in their favor no court judgments, no liens, and no interests, secured or unsecured, perfected or unperfected. They had no right to prevent removal of the entitlement allowing them to discharge their debts. They only had an expectation that they would be permitted to discharge their child support obligations, along with other debts, in bankruptcy. The debtors' situation differs markedly from the true retroactivity cases the majority cites, e.g., Holt v. Henley, 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767 (1914) (effect of bankruptcy amendment on claim of secured creditor who had retained title in bankrupt's personalty); Union Pacific Railroad Co. v. Laramie Stock Yards Co., 231 U.S. 190, 34 S.Ct. 101, 58 L.Ed. 179 (1913) (effect of congressional legislation on rights of way granted to railroads by previous act of Congress); McFaddin v. Evans-Snider-Buel Co., 185 U.S. 505, 511-14, 22 S.Ct. 758, 760-61, 20 L.Ed. 287 (1902) (effect of congressional curative act which deprived attaching creditor of property); Auffm'ordt v. Rasin, 102 U.S. 620, 26 L.Ed. 262 (1881) (impact of amendatory act on vested rights of bankrupt's assignee to certain wrongly transferred securities).
 
 
 34
 The majority is correct that this case falls squarely under the rule of United States v. The Schooner Peggy, 5 U.S. 103 (1 Cranch), 2 L.Ed. 49 (1801), that an appellate court must apply the law in effect at the time it renders its decision. Admittedly, some have characterized The Schooner Peggy as a retroactivity case, see, e.g., Schaefer, Prospective Rulings: Two Perspectives, 1982 Sup.Ct.Rev. 1, 19-23, but it is not. The Peggy was seized pursuant to a Presidential Commission to capture any armed French vessel found on the high seas. The Schooner Peggy, 5 U.S. at 103. Proceedings were begun to condemn the ship and its cargo as prize. Id. at 104. The circuit court reversed the district court and found The Peggy lawful prize. Id. at 105-106. While the case was pending before the Supreme Court, the President ratified the Friendship and Commerce Treaty between France and the United States, providing, among other things, for mutual return of "[p]roperty captured, and not yet definitively condemned." The Court stated that "[t]he Constitution of the United States declares a treaty to be supreme law of the land," and that it places an obligation on our courts. Id. at 109. No issue of retroactivity of application arose. The Peggy could not be lawful prize.
 
 
 35
 A case on point followed the clear rule of The Schooner Peggy. In Carpenter v. Wabash Ry. Co., 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940), the Court had a case pending when an amendment to the Bankruptcy Act gave railroad employees' personal injuries claims priority not only in bankruptcy, but also in equity receivership cases. 309 U.S. at 26, 60 S.Ct. at 417. As a matter of statutory construction and congressional intent, the Court found the amendment applicable without any discussion of retroactivity. Id. at 27-29, 60 S.Ct. at 418-419. The Court was simply "bound ... to consider and apply the amended statute." Id. at 29, 60 S.Ct. 419. It is on this ground that I would affirm.
 
 
 
 [1]
 In his concurring opinion, Judge Wallace is critical of the majority's discussion of retroactivity. Judge Wallace states: "Admittedly, some have characterized The Schooner Peggy as a retroactivity case, see, e.g., Schaefer, Prospective Rulings: Two Perspectives, 1982 Sup.Ct.Rev. 1, 19-23, but it is not." (concurring opinion page 1425). Among those authorities which have characterized The Schooner Peggy as a "retroactivity case" is the United States Supreme Court. In Linkletter v. Walker, 381 U.S. 618, 625, 85 S.Ct. 1731, 1735, 14 L.Ed.2d 601 (1965), the Supreme Court characterized the rule of The Schooner Peggy as follows:
 "One form of limited retroaction which differs somewhat from the type discussed above is that which was established in United States v. Schooner Peggy 1 Cranch 103, 2 L.Ed. 49 (1801)"
 
 
 [2]
 The Schooner Peggy reasoning was applied to the same statutory amendment now before us by Judge Shabaz In re Kuehndorf, 24 B.R. 555 (W.D.Wis.1982)
 A group of decisions in bankruptcy courts have held that a judge must apply the law as of the date of the filing of the petition. See, e.g., Matter of Flamini, 19 B.R. 303 (Bkrtcy.E.D.Mich.1982). These decisions ignore the principle that has evolved from the Schooner Peggy, which we are compelled to follow.