WALLACE, Circuit Judge,
concurring:
I concur in the result. I write separately to express my view that the majority’s discussion of retroactivity is unnecessary and confuses the issue. When the debtors filed their claims, they thought they were entitled to discharge their child support obligations in bankruptcy. This was because their spouses had assigned to Idaho their right to collect those support payments from their husbands. By the time the bankruptcy court rendered its decision, the law had been changed to make those payments non-dischargeable. I believe this case should not be analyzed as one involving the issue of retroactivity, but rather by application of the rule that the courts are governed by the law in effect at the time a decision is rendered, unless it would violate congressional intent or would be manifestly unjust. As the exceptions have not been proven, I would affirm.
The amendment was part of the Omnibus Budget Reconciliation Act of 1981. The Act was largely a fiscal measure designed to reduce federal spending and restore balance to our dual system of government. See 1981 U.S.Cong. & Ad.News, 97th Cong., 1st Sess., p. 396 et seq. States had complained of the economic burdens imposed on them by allowing this type of discharge. See, e.g.. In re Glidden, 653 F.2d 85, 87 (2d Cir.1981) (Connecticut’s challenge alleged “a possible loss of as much as $1.25 million in annual payments to the State, as well as a loss of $47.1 million in accumulated past child support arrearages.”).
This case does not involve the abrogation by legislation of established property interests. The debtors had in their favor no court judgments, no liens, and no interests, secured or unsecured, perfected or unper-fected. They had no right to prevent removal of the entitlement allowing them to discharge their debts. They only had an expectation that they would be permitted to discharge their child support obligations, along with other debts, in bankruptcy. The debtors’ situation differs markedly from the true retroactivity cases the majority cites, e.g., Holt v. Henley, 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767 (1914) (effect of bankruptcy amendment on claim of secured creditor who had retained title in bankrupt’s personalty); Union Pacific Railroad Co. v. Laramie Stock Yards Co., 231 U.S. 190, 34 S.Ct. 101, 58 L.Ed. 179 (1913) (effect of congressional legislation on rights of way granted to railroads by previous act of Congress); McFaddin v. Evans-Snider-Buel Co., 185 U.S. 505, 511-14, 22 S.Ct. 758, 760-61, 20 L.Ed. 287 (1902) (effect of congressional curative act which deprived attaching creditor of property); Auffm’ordt v. Rasin, 102 U.S. 620, 26 L.Ed. 262 (1881) (impact of amendatory act on vested rights of bankrupt’s assignee to certain wrongly transferred securities).
The majority is correct that this case falls squarely under the rule of United States v. The Schooner Peggy, 5 U.S. 103 (1 Cranch), 2 L.Ed. 49 (1801), that an appellate court must apply the law in effect at the time it renders its decision. Admittedly, some have characterized The Schooner Peggy as a retroactivity case, see, e.g., Schaefer, Prospective Rulings: Two Perspectives, 1982 Sup.Ct.Rev. 1, 19-23, but it is not. The Peggy was seized pursuant to a Presidential Commission to capture any armed French vessel found on the high seas. The Schooner Peggy, 5 U.S. at 103. Proceedings were begun to condemn the ship and its cargo as prize. . Id. at 104. The circuit court reversed the district court and found The *1426 Peggy lawful prize. Id. at 105-106. While the case was pending before the Supreme Court, the President ratified the Friendship and Commerce Treaty between France and the United States, providing, among other things, for mutual return of “[property captured, and not yet definitively condemned.” The Court stated that “[t]he Constitution of the United States declares a treaty to be supreme law of the land,” and that it places an obligation on our courts. Id. at 109. No issue of retroactivity of application arose. The Peggy could not be lawful prize.
A case on point followed the clear rule of The Schooner Peggy. In Carpenter v. Wabash Ry. Co., 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940), the Court had a case pending when an amendment to the Bankruptcy Act gave railroad employees’ personal injuries claims priority not only in bankruptcy, but also in equity receivership cases. 309 U.S. at 26, 60 S.Ct. at 417. As a matter of statutory construction and congressional intent, the Court found the amendment applicable without any discussion of retroactivity. Id. at 27-29, 60 S.Ct. at 418-419. The Court was simply “bound ... to consider and apply the amended statute.” Id. at 29, 60 S.Ct. 419. It is on this ground that I would affirm.