### GRISSO v. UNITED STATES et al.
#### No. 2708.

Circuit Court of Appeals, Tenth Circuit.

Nov. 10, 1943.

W. F. Semple, of Tulsa, Okl. (Ben Carter, of Durant, Okl., on the brief), for appellant.

Fred W. Smith, of Washington, D. C., (Norman M. Littell, Asst. Atty. Gen., Cleon A. Summers, U. S. Atty., and Charles N. Champion, Asst. U. S. Atty., both of Muskogee, Okl., and Vernon L. Wilkinson, of Washington, D. C., on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

A tract of land in Bryan County, Oklahoma, was allotted to Evan Jim, an enrolled, full-blood Choctaw Indian, as his homestead. The allottee died intestate in 1919, leaving as his heirs at law his wife, Germain Jim, an enrolled, full-blood Choctaw, and his daughter, Frances Bessie Jim, born after March 4, 1906. Germain Jim later married Barnett Simpson, and she died intestate in 1924, leaving as her heirs at law her husband, Barnett Simpson, an enrolled, full-blood Choctaw, and four children, Pearl Fisher, Frances Bessie Jim, Robert Simpson, and Charles Simpson, all unenrolled, full-blood Choctaws. On May 27, 1931, Barnett Simpson executed a deed purporting to convey his interest in the land to J. C. Petty; and on June 18, 1931, Pearl Fisher executed a like deed purporting to convey her interest to the same grantee. Neither deed was approved by the county court, or the Secretary of the Interior. Robert Simpson and Charles Simpson, minors, by their legal guardian, and Frances Bessie Jim, by her legal guardian, instituted in the district court of Bryan County a partition suit in which Petty was named as defendant. Commissioners reported that the land could not be partitioned in kind, and appraised it at $1500. The plaintiffs waived their right to take at the appraised value, Petty elected to take, the land was sold to him, the sale was confirmed, and a sheriff's deed issued. Petty conveyed to W. E. Grisso, and the latter conveyed to Donald Horton Grisso. Donald Horton Grisso instituted this action in the state court against Frances Bessie Jim, now Frances Bessie Dixon, Pearl Fisher, now Pearl Reese, Barnett Simpson, Robert Simpson, Charles Simpson, J. C. Brackett, H. A. Brackett, the unknown heirs of Evan Jim, and the unknown claimants, to determine heirs and quiet title. Notice was served on the Superintendent of the Five Civilized Tribes, as provided in the Act of April 12, 1926, 44 Stat. 239. The United States caused the action to be removed to the United States court, and later intervened praying that the deeds from Barnett Simpson and Pearl Fisher to J. C. Petty and all subsequent conveyances be cancelled and title quieted in the Indian heirs for their respective interests. Judgment was entered quieting title in the Indian heirs, and Grisso appealed.

The first question presented is whether the restrictions against alienation of the land expired April 26, 1931. If so, the

deeds from Barnett Simpson and Pearl Fisher to Petty were valid without approval, since they were executed after that date. Section 19 of the Act of April 26, 1906, 34 Stat. 137, 144, provides that no Choctaw, Chickasaw, Cherokee, or Seminole Indian of the full-blood shall have power to alienate in any manner any of the lands allotted to him for a period of twenty-five years from and after the passage and approval of the act; and section 22 provides that the adult heirs of a deceased Indian of any of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his share of the land of the tribe, may sell the lands inherited from the decedent, but that all conveyances made under the provision by heirs of the full-blood shall be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe. Section 1 of the Act of May 27, 1908, 35 Stat. 312, provides in part: "All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restrictions. All lands, except homesteads, of said allottees enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions. All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, including minors of such degrees of blood, and all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-six, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe."

And the material part of section 9, as amended by the Act of April 12, 1926, 44 Stat. 239, provides: "The death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That hereafter no conveyance by any full-blood Indian of the Five Civilized Tribes of any interest in lands restricted by section 1 of this Act acquired by inheritance or devise from an allottee of such lands shall be valid unless approved by the county court having jurisdiction or the settlement of the estate of the deceased allottee or testator: Provided further, That if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March 4, 1906, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior for the use and support of such issue, during their life or lives, until April 26, 1931; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from restrictions; if this be not done, or in the event the issue hereinabove provided for die before April 26, 1931, the land shall then descend to the heirs, according to the laws of descent and distribution of the State of Oklahoma, free from all restrictions: * * *."

Frances Bessie Jim, daughter of the allottee, was born after March 4, 1906, and she is still living. Therefore, on the death of the allottee the land constituting his homestead remained inalienable for her use and support until April 26, 1931. Parker v. Riley, 250 U.S. 66, 39 S.Ct. 405, 63 L.Ed. 847; Holmes v. United States, 10 Cir., 53 F.2d 960; United States v. Lee, 10 Cir., 108 F.2d 936.

Section 1 of the Act of May 10, 1928, 45 Stat. 495, continues for an additional period of twenty-five years commencing April 26, 1931, restrictions against alienation of lands allotted to members of the Tribes, enrolled as one-half or more Indian blood; and section 2 extends in like manner section 9, as amended, supra, but repeals, effective April 26, 1931, the language constituting the second proviso therein. The legislative purpose of this act was twofold. The first was to continue in force for an additional period of twenty-five years restrictions against the alienation of lands allotted to enrolled Indians of half or more Indian blood; and the second was to subject to the same restrictions allotted lands, both homestead and surplus, inherited by full-blood Indians, regardless of the dates of births of the heirs. The language indicates such dual purpose, and the legislative history of the act makes it clear. The special estate of the issue of the allottee, born after March

4, 1906, expired April 26, 1931, and thereupon the entire estate vested in the Indian heirs of the allottee and those of Germain Jim in their respective interests. Parker v. Riley, supra; Holmes v. United States, supra.; United States v. Lee, supra. But since they were full-blood Choctaws, the qualified restriction imposed by the first proviso in section 9, as amended, supra, became effective; and they could not execute a valid conveyance without the approval of the county court having jurisdiction of the settlement of the estate. of the deceased allottee.

It is urged that after section 9 was amended by the Act of April 12, 1926, supra, approval of a conveyance was necessary only where the inheritance came directly from the allottee; that Barnett Simpson and Pearl Fisher did not inherit from the allottee; that they inherited from an heir of the allottee; and that therefore the deeds executed by them respectively were valid without approval. Prior to the amendment, neither section 9 as originally enacted nor any other statute required the approval of a conveyance of land acquired by devise from the allottee. Allotted land inherited by full-blood Indian heirs could be conveyed only with approval, but there were no restrictions against the alienation of like land by full-blood Indian devisees. The statute, as amended, provides that no conveyance by a full-blood member of the Tribes of any interest in lands restricted by section 1 of the act "acquired by inheritance or devise from an allottee of such lands" shall be valid unless approved by the county court. The manifest purpose of the amendment was to place restrictions upon conveyances by full-blood Indian devisees. When the language, the background, and the purpose of the amendment are taken into consideration, it seems fairly clear that the words "from an allottee" have application only where the land was acquired by devise. No interest in this land was acquired in that manner. In every instance, it was acquired by inheritance.

Appellant relies upon the judgment in the action for partition and the conveyance executed pursuant to it. It is argued that even though the land was restricted against alienation without the approval of the county court, and therefore the respective deeds executed by Barnett Simpson and Pearl Fisher were without effect, the judgment in the action for partition is final and cannot be attacked collaterally. The partition and sale of restricted land in an action for partition constitutes an involuntary alienation, within the meaning of the Acts of Congress imposing restrictions; and prior to the enactment of the Act of June 14, 1918, 40 Stat. 606, 25 U.S.C.A. §§ 355, 375, the state courts in Oklahoma were without any authority under their general jurisdiction to partition and order sold land of that character acquired by full-blood members of the Tribes. Coleman v. Battiest, 65 Okl. 71, 162 P. 786; Lewis v. Gillard, 70 Okl. 231, 173 P. 1136. But section 2 of that act provides that the lands of full-blood members of any of the Five Civilized Tribes are made subject to the laws of the state respecting the partition of real estate, and that in case of a sale under a decree of partition the conveyance shall operate to relieve the land of all restrictions of every character. And where the proceedings in an action for partition are regular in every respect, the judgment is final and a conveyance executed pursuant to its provisions passes title free of restrictions. United States v. Hellard, 10 Cir., 138 F.2d 985.

As we have already said, this land was restricted against alienation, without the approval of the appropriate county court; and the deeds executed by Barnett Simpson and Pearl Fisher were wholly ineffective because not approved and therefore failed to convey any interest in the land. These two heirs did not alienate their interests in the land and Petty acquired none through the medium of such deeds. They continued as owners of such interests, and they were not parties to the action for partition. Part owners or cotenants in real estate are indispensable parties in an action for partition as there can be no proper, complete, or conclusive division or accounting without their actual or constructive presence. Barney v. Baltimore City, 6 Wall. 280, 18 L.Ed. 825; Holloway v. McIlhenny Co., 77 Tex. 657, 14 S.W. 240; Estis v. Nell, 108 Mo. 172, 18 S.W. 1006; Russell v. Bell, 160 Ala. 480, 49 So. 314; Solomon v. Redona, 52 Cal. App. 300, 198 P. 643; Curtis v. Reilly, 188 Iowa 1217, 177 N.W. 535; Broussard v. Allen, 198 La. 475, 3 So.2d 742.

By the Act of June 14, 1918, supra, Congress entrusted to courts of the state having jurisdiction to partition lands generally the function of determining in a ju-

dicial proceeding in partition whether the land shall be sold, and if so to order the sale, and provided that when such a sale is made it shall constitute a removal of the restrictions against alienation. Where the state court determines in such a proceeding that the land shall be partitioned and sold free of restrictions, it acts in part as the selected agency in giving effect to the will of Congress. Parker v. Richard, 250 U. S. 235, 39 S.Ct. 442, 63 L.Ed. 954; United States v. Hellard, supra. And in such a proceeding, the facts essential to the exertion of the jurisdiction of the court must affirmatively appear in the record. Galpin v. Page, 18 Wall. 350, 21 L.Ed. 959.

Here, the proceedings in the action for partition did not disclose in any manner that land belonging to full-blood Indians was involved. It was disclosed that Evan Jim was an enrolled Choctaw, but no mention was made of his degree of Indian blood, or that of his wife, or that of any of the parties to the action. And it was not disclosed that the land was restricted against alienation. On the contrary, it was affirmatively alleged in the petition that the land descended to the heirs free from all restrictions, and the record was otherwise silent in respect of the matter. In short, the entire proceedings were handled in the same manner as though the land was that of white citizens of the state. And there is nothing in the record to indicate even remotely that the court undertook to exert its jurisdiction and authority under the statute, supra, to partition restricted land, or to determine and adjudicate that land of that character should be sold, freed of existing restrictions.

Petty was a relative of W. F. Semple. While he was named as grantee in the deeds executed by Barnett Simpson and Pearl Fisher, title was actually taken for Semple. Semple secured the appointment of Culbertson as guardian for Charles Simpson and Robert Simpson. On the same day of the execution of the deed from Pearl Fisher to Petty, Charles Simpson and Robert Simpson, acting by their guardian appointed in that manner, and Frances Bessie Jim, by her guardian, instituted the action for partition. Semple was attorney for the plaintiffs. Petty who held his ostensible interest in the land for the benefit of Semple, was the sole defendant. In effect, Semple acted as attorney for the plaintiffs in an action in which he was the real defendant in interest. No action was taken in the case for five days after the filing of the petition. But on the fifth day, the answer of Petty was filed, the judgment was entered determining the respective interests of the plaintiffs and the defendant and appointing commissioners, the oath of the commissioners was taken and filed, the report of the commissioners was made and filed, the waiver of plaintiffs to take the land at the appraised value was filed, the election of the defendant to take at such value was filed, the order was entered confirming the report and directing the sheriff to execute the deed, the deed was executed, the report of the sheriff that he had executed it was filed, and the order was entered confirming such report. In short, the entire proceeding instituted in the manner indicated was concluded within five days, and everything in it except the filing of the petition took place on a single day. Petty then conveyed to W. E. Grisso, but the transaction had been arranged before the institution of the partition action. Grisso paid the consideration for the conveyance to the firm of which Semple was a member, and the firm disbursed the funds less attorney's fee and expenses to the parties according to their respective interests as shown by the judgment. The proceeding was not in any real sense adversary. It was not a bona fide one for partition. It was merely colorable as an ordinary action to quiet title, but in reality was for the undisclosed purpose of effecting an alienation of the land, freed of restrictions. It was not one of honest and actual antagonistic assertion of rights for adjudication. Gardner v. Goodyear Dental Vulcanite Co., 131 U.S.Appendix ciii, 21 L. Ed. 141; United States v. Johnson, 319 U.S. 302, 63 S.Ct. 1075, 87 L.Ed. 1413.

In addition to other contentions advanced, the United States urges that the judgment in the action in the state court is void because the United States was not a party to the action. The Act of June 14, 1918, supra, does not provide that the United States shall be a party to such an action, and where the proceedings are otherwise regular and in conformity with law, the judgment is not void merely because the United States is not a party. United States v. Hellard, supra.

The judgment is affirmed.