## TOWNSEND et al. v. FIRST NAT. BANK & TRUST CO. et al.

### No. 3297.

Circuit Court of Appeals, Tenth Circuit.

Nov. 5, 1946.

Creekmore Wallace, of Oklahoma City, Okl. (Don Anderson and B. E. Harkey, both of Oklahoma City, Okl., and Roy White, of Eufaula, Okl., on the brief), for appellants.

C. P. Gotwals, of Tulsa, Okl., and James D. Gibson, of Muskogee, Okl. (Wm. A. Killey, of Muskogee, Okl., on the brief), for appellees.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Eastman Richard[1] was an enrolled full-blood Creek Indian owning both his individual allotment and allotments he had inherited. Oil production from these allotments resulted in royalty payments under oil and gas leases accumulating to Richard's credit in the Union Agency at Muskogee, Oklahoma. Richard was an adult and competent.

In 1919, an action was brought against Richard in the District Court of Muskogee County, Oklahoma, seeking damages for alleged alienation of affections. A verdict was returned against Richard for $2,000. From an order granting the plaintiff in that action a new trial, Richard appealed to the Supreme Court of Oklahoma. The State Supreme Court required Richard to file a supersedeas bond of $5,000. Richard's lawyer requested Ogden to execute the bond as surety. Ogden was president of the First National Bank of Muskogee,[2] and required that a $5,000 cashier's check be deposited with the bank to indemnify him as surety. J. Vance, a bookkeeper in the Union Indian Agency at Muskogee, signed Richard's name to the regular application form for disbursement of restricted funds under date of March 6, 1920, for the recited purpose of "special cash payment $5000.00 for deposit in the First National of Muskogee, Okla. as indemnification for appeal bond." It was a rather common practice for clerks in the Indian Agency to sign the Indian's name to an application for disbursement of funds. But the disbursements were made by check payable to the Indian and his personal endorsement of the check was required. The application duly passed through the regular channels at the Agency and was finally approved by the Assistant Superintendent. Richard's oil royalty account was charged with $5,000, and D. Buddrus, the Agency cashier, issued a check in that amount payable to Richard. Neither the Secretary of the Interior nor the Commissioner of Indian Affairs approved the release of the funds.

On March 6, 1920, Hockman, assistant cashier of the bank, gave the bank's receipt to Buddrus for the $5,000 check. The bank received the proceeds of the check and issued its own cashier's check, payable to itself, in the amount of $5,000, and held the cashier's check to indemnify Ogden. Ogden and H. W. Gibson then executed the supersedeas bond as sureties. Richard's appeal was dismissed by the Supreme Court of Oklahoma on August 31, 1920. Shortly thereafter, the suit was compromised. The cashier's check remained in the bank until November 12, 1925. The bank then, having been advised that there was no longer any obligation on the supersedeas bond, endorsed the cashier's check to the order of Richard. The latter then endorsed the check in blank and it was deposited to his credit in his account at the bank.

Richard died March 31, 1934. His heirs brought this action in the District Court of Muskogee County against the bank and

---

[1] Hereinafter called Richard.  [2] Hereinafter called the bank.

Ogden to recover the proceeds of the $5,-000 check, on the ground that the funds were restricted and that the bank should have returned them to the Agency rather than to have deposited them to Richard's account. Notice of the pendency of the action was served on the Superintendent for the Five Civilized Tribes. The United States petitioned for removal and the cause was removed under § 3 of the Act of April 12, 1926, 44 Stat. 240. The United States intervened in the action. From a judgment for the bank and Ogden, the United States and the heirs appealed. Thereafter, the United States dismissed its appeal. The cause is now pending here on the appeal of the heirs.

Section 2 of the Act of May 27, 1908, 35 Stat. 312, in part provides:

"That leases of restricted lands for oil, gas or other mining purposes, * * * may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise."

Pursuant to § 2, the Secretary of the Interior prescribed Regulations governing the leasing of land and removal of restrictions of members of the Five Civilized Tribes. Section 20 of such Regulations reads in part as follows:

"All royalties, rents, or payments due under leases which have been or may be approved by the Secretary of the Interior shall be paid to the United States Indian Agent at Union Agency, Muskogee, Okla., or to such other person as may be designated by the Secretary of the Interior, for the benefit of the various lessors, or, in cases of minors and incompetents, shall be deposited as hereinafter specified. * * * No royalties on such leases shall be paid by the lessee direct to the lessors or their representatives. * * *"

Section 25 of such Regulations, as amended July 23, 1910, and November 29, 1912, reads in part as follows:

"All royalties, rents or payments accruing under any lease made for or on behalf of any minor or incompetent shall be held by the United States Indian Superintend-ent, Union Agency, or such other disbursing officer as may be designated by the Secretary of the Interior, to the credit of the guardian (or curator) of such minor or incompetent and shall be paid to such guardian (or curator) upon voucher executed by him and approved by the Judge of the County (Probate) Court having jurisdiction. * * *

"Provided, however, that the said superintendent, or other officer in charge of the Union Agency, is authorized, in his discretion, where considered for the best interests of any adult, minor, or incompetent lessor, or his or her heirs, for whose account royalties, rents or payments accruing under any lease have been paid to said superintendent, to withhold the disbursement of such royalties, rents or payments, wholly or in part from any such adult, or guardian or curator of any such minor or incompetent, or his or her heirs, until such time or times as the payment thereof is considered best for the benefit of said lessor, or his or her heirs."

The funds disbursed to Richard were restricted while they remained in the custody of the Indian Agency. The restrictions were removed if the funds were lawfully disbursed by the Agency.

■ Section 25 of the Regulations authorized the Superintendent of the Agency to withhold the disbursements of royalties derived from leases on restricted land until such time or times as he considered the payment thereof to be for the benefit of the lessor. The language of the Regulation clearly implies the authority of the Superintendent to disburse the funds to the lessor when, in his opinion, so to do would be for the benefit of the lessor.[3]

The heirs relied upon regulations (25 CFR 221.1, 221.2, 221.3) dealing with the disbursement of funds of individual Indians in the custody of a disbursing officer. Those are general regulations. They do not, in our opinion, qualify the specific regulations dealing with disbursement of royalties received from leases on restricted lands of members of the Five Civilized Tribes.

---

[3] See American Nat. Bank of Bristow, Okl., v. American Baptist Home Mission Soc., 2 Cir., 106 F.2d 192, 197.

House v. United States, 10 Cir., 144 F. 2d 555, is not to the contrary. There, the court held that the Superintendent was not authorized to release all the funds as they accrued without exercising the duties imposed upon him to determine whether the disbursements were for the benefit of the lessor.

█ We regard the fact that Richard did not sign the application for the disbursement personally as of no moment. A signed application is not required by the Regulations. That was a matter of procedure in the Agency, and it was common practice for a clerk in the Agency to make out and sign the application, but to require the Indian lessor to endorse the disbursing check. The important matter is whether the funds were disbursed by the Agency with the approval of the Superintendent, and that the latter considered the disbursement to be for the benefit of the lessor. We think this record leaves no doubt that the Assistant Superintendent determined that the disbursement of the funds was for the best interest of Richard and that, in fact, it was for his best interest.

The check on its face was unconditional. There is nothing in the application or with respect to the disbursing check, brought home to the bank, indicating that the funds were to be returned to the Agency when they had served their purpose as indemnity for the supersedeas bond.

Affirmed.