## BRADBURN v. SHELL OIL CO., Inc.
### No. 3744.

United States Court of Appeals
Tenth Circuit.

March 29, 1949.

Creekmore Wallace, of Oklahoma City, Okl. (B. E. Harkey and Don Anderson, both of Oklahoma City, Okl., on the brief), for appellant.

George W. Cunningham, of Tulsa, Okl. (Jesse M. Davis, of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Nancy Bradburn, nee Yarhola, a full-blood Creek Indian devisee of an undivided two-fifths interest in her mother's allotted lands, brought this action against the Shell Oil Company to recover certain proceeds of oil royalty from this interest paid by Shell to the trustees of her estate. The suit is based upon the contention that the designation of a successor trustee in 1929, amounted to a conveyance of the devised interest in the allotted lands within the meaning of the Act of April 12, 1926; [1] that since the instrument designating the successor trustee was not approved by the county court having jurisdiction of the estate as provided by the Act, it was invalid, and the payments by Shell to the trustee for oil produced from the devised interest were unauthorized, and therefore did not operate to discharge Shell's obligations to Nancy under its oil and gas lease. The trial court gave judgment for Shell on the grounds that the judgment in Chisholm v. House, 10 Cir., 160 F.2d 632, was both res judicata and stare decisis of the issues tendered by the pleadings here.

The interesting background of this litigation is found in Bradburn v. McIntosh, 10 Cir., 159 F.2d 925; Bradburn v. Nolen, 10 Cir., 159 F.2d 933; Bradburn v. McIntosh, 10 Cir., 159 F.2d 935; Bradburn v. First Christian Church, 10 Cir., 160 F.2d 341. The related and pertinent facts are well stated in Chisholm v. House, supra. For the purpose of this case, it is sufficient to state: Upon the death of Linda Yarhola, a full-blood Creek Indian, on October 11, 1916, her allotment descended by devise, one-fifth undivided interest to her husband Cussehta Yarhola, and an undivided two-fifths interest to each of her daughters, Lessey Hawkins and Nancy Yarhola (Severs), appellant here. The lands were subject to an admittedly valid and producing oil and gas lease in favor of the Shell Oil Company, appellee here.

In 1924, Nancy having been restored to competency by the county court with jurisdiction of her estate, and all restrictions upon the lands and the rents and profits therefrom having been removed, she and her then husband (Severs) executed a trust instrument, by the terms of which they conveyed all of her property, including her undivided two-fifths interest in the devised allotted lands, to two trustees, with broad powers of management and disposition, including the right to collect and dispose of the proceeds of the oil produced from the lands so conveyed. The trust instrument significantly provided for the designation of successor trustees, in the event of a vacancy, by the remaining trustee and the trustor. Accordingly, when on December 19, 1929, one of the trustees resigned, the remaining trustee and Nancy, joined by her husband, executed an instrument appointing one D. W. Johnston successor trustee of the trust estate, including the undivided two-fifths devised allotted interest. Shell continued to pay all of the oil royalties from this interest to the trustees in accordance with executed division orders, until December 15, 1937, when by mutual agreement, the trust was terminated and the trustees assigned to Nancy all of the remaining assets of the trust estate, and executed a transfer order directing Shell to pay Nancy all of the royalties accruing to the credit of the devised interest.

Two days later, and on December 17, 1937, Nancy executed a trust instrument conveying all of her estate, including the undivided two-fifths devised interest involved here, to her then husband, Roy Bradburn, as trustee, with power to collect

[1] The Act of April 12, 1926, 44 Stat. 239, amended Section 9 of the Act of May 27, 1908, 35 Stat. 315, to read in part as follows: "The death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided That hereafter no conveyance by any full-blood Indian of the Five Civilized Tribes of any interest in lands restricted by section 1 of this Act acquired by inheritance or devise from an allottee of such lands shall be valid unless approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee or testator: * * *."

the royalty and manage her estate, but without any power of sale. Upon the execution of proper division orders, Shell paid the proceeds of the royalties accruing from the interest to the trustees, until it sold the lease in 1939.

It is admitted that Shell paid all the proceeds of the royalties from the devised lands to Nancy's designated trustees from the date of the execution of the respective trusts, until it no longer owned the lease or sustained any obligation thereunder. It is also conceded that at the time of the execution of the original trust agreement in 1924, Nancy was competent to and did execute a valid trust agreement conveying her lands, including the interest involved here, to the trustees for her use and benefit; and that the payments by Shell under its lease to the trustees constituted a valid discharge of its obligations under the lease until 1929, when D. W. Johnston was designated successor trustee.

The Chisholm case involved the undivided one-fifth interest in the Linda Yarhola allotment, which passed to her husband, Cussehta. Cussehta having died in 1936, the United States brought suit in that case in behalf of Nancy and Lessey, his heirs at law, to recover, among other things, the proceeds of the royalties produced from this interest under the Shell lease between the dates of April 28, 1924 to November 27, 1937. The suit was based upon the grounds that: (1) Cussehta was mentally incompetent to execute trust instruments in 1924, conveying his property to trustees; (2) his trustees and others conspired to defraud him; and (3) supplemental trust agreements executed after the effective date of the 1926 Act were invalid because not approved by the appropriate county court; all of which Shell had actual or constructive notice, making the payments under the lease to the trustees unauthorized and ineffectual to discharge its obligations under the lease.

We held that Shell having paid all of the royalties accruing to this interest under the lease to Cussehta's designated trustees, and after his death to Nancy and Lessey's trustees, it was not chargeable with notice or knowledge of the extrinsic fraud practiced upon him, and acquitted Shell for asserted liability on that ground. With respect to the effect of the 1926 Act, we were of the opinion that although a supplemental trust instrument dated July 13, 1927, transferring his devised interest under the lease to Nancy and Lessey, with a life estate in himself, was void for lack of county court approval, the receipt of the royalty payments nevertheless continued to be unrestricted because, in our view, the 1926 Act did not have the effect of reimposing restrictions upon the receipt of oil royalties which had heretofore been restricted only by regulations of the Secretary of the Interior under the 1908 Act. We said that the 1926 Act "in no sense impinged on the right to receive payment of royalties under oil and gas leases" [160 F.2d 647], the restrictions upon which had been removed by the Secretary of the Interior, and not reimposed by him before the effective date of the 1926 Act. In sum, we said that the continued receipt of royalties under a lease on devised allotted lands did not amount to a conveyance of an interest in allotted lands within the meaning of the 1926 Act. Thus, Cussehta or his nominees were free to continue to receive royalties from his devised interest under the Shell interest, although his attempted conveyance of the interest was invalid.

This view does not derogate from the established rule that a conveyance of rents and profits issuing out of allotted lands amounts to an assignment of interest in those lands within the meaning of the 1926 Act. See Tiger v. Sellers, 10 Cir., 145 F.2d 920. It is entirely consistent with the restrictions imposed by the Act of January 27, 1933, 47 Stat. 777, 25 U.S.C.A. § 355 note, upon funds belonging to Indians of the Five Civilized Tribes of one-half or more Indian blood. See First National Bank v. Ickes, 81 U.S.App.D.C. 61, 154 F.2d 851. See also Ward v. United States, 10 Cir., 139 F.2d 79; United States v. Williams, 10 Cir., 139 F.2d 83; Murray v. Ned, 10 Cir., 135 F.2d 407; House v. United States, 10 Cir., 144 F.2d 555. This construction simply leaves the law as it prevailed under the 1908 Act, prior to the 1926 Amendment, Section 9 of which im-

posed restrictions against alienation of lands, while Section 2 of the Act authorized the Secretary of the Interior to impose restrictions upon royalties produced therefrom. Parker v. Richard, 250 U.S. 235, 39 S.Ct. 442, 63 L.Ed. 954; American National Bank v. American Baptist Home Mission Society, 2 Cir., 106 F.2d 192; Townsend v. First National Bank & Trust Co., 10 Cir., 157 F.2d 852. It comports with the manifest purpose of the 1926 Act, as stated in Grisso v. United States, 10 Cir., 138 F.2d 996.

We seriously doubt whether the designation of a successor trustee in 1929, in accordance with the terms of the trust instrument, amounted to a conveyance of the trust property, or for that matter whether the designation of Nancy's husband as trustee in 1937, to receive her royalties without power to reconvey the land, amounted to a conveyance of an interest in her devised allotted lands, within the meaning of the 1926 Act. But regardless of the effect of the 1926 Act upon these challenged instruments, we are convinced that under the authority of the Chisholm case, which we reaffirm, it did not affect Nancy's right to the continued receipt of royalty from the devised lands, or her right to designate some one to receive it for her.

Thus the judgment of the trial court is affirmed on the authority of the Chisholm case, and it therefore becomes unnecessary to discuss or decide the more technical question of res judicata or estoppel by judgment as grounds for the trial court's judgment.